## *OKLAHOMA GIN CO. v. STATE.

No. 7022—Opinion Filed March 14, 1916.

Rehearing Denied Dec. 26, 1916.

(158 Pac. 629.)

(Syllabus by the Court.)

1. **Corporation Commission — Statutes — Jurisdiction of Commission — Subjects and Titles of Acts.**

Section 13 of an act approved June 10, 1908 (Sess. Laws 1907-08, c. 83), vested the Corporation Commission with jurisdiction to prescribe rates and charges under the conditions prescribed by the act, and the same was expressed in its title; the same being referable and cognate thereto.

2. **Constitutional Law — Distribution of Governmental Powers—Corporation Commission.**

The power thus delegated by the Legislature to the Corporation Commission is not in conflict with Const. art. 4, sec. 1, and is delegated pursuant to Const. art. 9, sec. 18.

3. **Corporation Commission—Orders—Validity—Cotton Ginning Rates.**

In fixing the rates and charges complained of, the sole question before the Commission was whether the charge was a reasonable exaction to be paid by the individual dealing with the company, considering the service to be rendered by the company. With the question whether or not the rate when applied to all the gins concerned would yield sufficient revenue to pay the operating expenses and keep all of them running for any length of time, the Commission had no concern, and hence the effect of an admission by the Corporation Commission, in a proceeding for contempt against one company whose rates and charges had been fixed, for violating the order, that such it would not, is nil.

4. **Warehousemen — Cotton Ginners — Corporation Commission—Orders—Evidence.**

Evidence examined, and held, that the prima facie presumption attending the order of the Commission, fixing the minimum

charge for ginning cotton at C. at 50 cents per hundred for lint cotton, with maximum charge of $2.50 a bale, and fixing the charge of bagging and ties at approximately $1 per bale, has not been overcome.

Appeal from State Corporation Commission.

Complaints against the Oklahoma Gin Company and others for forming an unlawful combination in restraint of trade. From orders of the Corporation Commission imposing penalties, the Oklahoma Gin Company appeals. Affirmed.

Ames, Chambers, Lowe & Richardson, for appellant.

S. P. Freeling, Atty. Gen., for the State.

TURNER, J. Upon a hearing of three separate complaints in causes Nos. 1976, 1977, and 1978, made before the Corporation Commission, charging that appellant and certain other ginning companies operating at Chandler had formed an unlawful combination in restraint of trade by fixing a certain price for ginning cotton in violation of an act, entitled "An act to define a trust, monopoly, unlawful combination in restraint of trade; to provide civil and criminal penalties and punishment for violation thereof and damages thereby caused; to regulate such trusts and monopolies; to promote free competition for all classes of business in the state; and declaring an emergency" (approved June 10, 1908, Sess. Laws 1907-1908, p. 750), the Commission, present all parties in interest, on October 17, 1913, made and entered order No. 759, fixing the minimum charge for ginning cotton at Chandler at 50 cents per hundred pounds of lint cotton, with a maximum charge of $2.50 per bale, also fixing the charge for bagging and ties at approximately $1 per bale. On February 26, 1914, three separate complaints were filed with the Commission against the appellant, Oklahoma Gin Company, which operated a round bale gin at Chandler, charging it with three separate violations of said order, to which appellant answered, admitting violating the order, but alleging the same to be unjust, unreasonable, and void for certain reasons therein set forth. By consent of parties the three complaints were consolidated and tried together as one case, at the conclusion of which the Commission made and entered three orders adjudging appellant guilty of all three charges and fining it $500 in each case. In each case appellant filed exceptions, and, after motion for new trial filed and also overruled, brings each case here pursuant to Comp. Laws 1909, sec. 1239 (Sess. Laws 1907-1908, p. 230), where all were consolidated on cause No. 7022.

Assailing the validity of the order, it is contended that section 13 of said act vests no

jurisdiction in the Corporation Commission, and, if it does, that the same is not embraced within the title of the act, and hence in violation of article 5, sec 57, of the Constitution, and void. Section 13 reads:

"Whenever any business, by reason of its nature, extent, or the existence of a virtual monopoly therein, is such that the public must use the same, or its services, or the consideration by it given or taken or offered, or the commodities bought or sold therein are offered or taken by purchase or sale in such a manner as to make it of public consequence, or to affect the community at large as to supply, demand or price or rate thereof, or said business is conducted in violation of the first section of this act, said business is a public business, and subject to be controlled by the state, by the Corporation Commission or by an action in any district court of the state, as to all of its practices, prices, rates and charges. And it is hereby declared to be the duty of any person, firm or corporation engaged in any public business to render its services and offer its commodities, or either, upon reasonable terms without discrimination and adequately to the needs of the public, considering the facilities of said business."

Not so. When the Legislature by section 1 of the act denounced every act, agreement, contract, or combination, in whatsoever form, and every conspiracy in restraint of trade within the state as illegal, and in section 13 provided, among other things, that:

"Whenever any business [within the state] * * * is such that the public must use the same, or its services, * * * or [whenever] the commodities bought or sold therein are offered or taken by purchase or sale in such a manner as to make it of public consequence, or [in such manner as] to affect the community at large as to supply, demand or price or rate thereof, or [and] said business is conducted in violation of the first section of this act, said business is a public business, and [is] subject to be controlled, * * * by the Corporation Commission"

—it meant that whenever a business, although organized, it may be, for the purpose of private gain, has placed its property in such a position that the public has become interested in its use, and such business is conducted in violation of section 1 of the act, i. e., governed by a trust, monopoly, or combination or conspiracy in restraint of trade, the same was, by the act, declared to be a public business, and made subject to the control of the Corporation Commission. Speaking to said section, in Shawnee Gas & Elect. Co. v Corporation Commission, 35 Okla. 454, 130 Pac. 127, quoting approvingly from an unpublished opinion of Hayes, J., we said:

"This section provides that whenever a business shall have certain characteristics,

it shall be a public business, and shall be subject to the jurisdiction of the Corporation Commission to regulate its practices, rates, and prices; but it does not provide that all public business shall be subject in these respects to such jurisdiction. * * * The first part of said section attempts to define the class of business which the latter part of the section subjects to the jurisdiction of the Corporation Commission and the district courts. It appears to us clear that what was intended was to bring within the jurisdiction of the Commission the regulation of charges and rates for services connected with those businesses that violate the acts and are connected, not with business strictly of a public character, such as common carriage, supply of water and gas, but with that class of business in which the owners, without any intent of public service, have placed their property in such a position that the public has an interest in its use. The distinction between the class of business and its service intended to be defined by and included in said section and the business and service of public corporations is, we think, well made by Mr. Justice Brewer, who delivered the opinion of the court in Cotting v. Godard, 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, in the following language: 'In the one [referring to property devoted to public service] the owner has intentionally devoted his property to the discharge of a public service. In the other, he has placed his property in such a position that, willingly or unwillingly, the public has acquired an interest in its use. In the one he deliberately undertakes to do that which is a proper work for the state. In the other, in pursuit of merely private gain, he has placed his property in such a position that the public has become interested in its use. In the one it may be said that he voluntarily accepts all the conditions of public service which attach to like service performed by the state itself; in the other, that he submits to only those necessary interferences and regulations which the public interest require.' It was this second class of business with which we think section 13 was dealing and intended to place under the jurisdiction of the Corporation Commission and the district courts of the state as to all practices, rates, and charges. * * * The act confers, not only upon the Corporation Commission jurisdiction to prescribe rates and charges under the conditions therein named, but confers also a like and concurrent power upon the district courts of the state."

And the jurisdiction thus vested was embraced in the title of the act. The act was one "defining a trust, unlawful combination in restraint of trade, monopoly," and one "to regulate such trusts and monopolies." Hingle v. State, 24 Ind. 28, involved the constitutionality of the fourteenth section of the liquor law of 1859 (Laws 1859, c. 130), which attempted to confer jurisdiction of cases prosecuted for the violation of the act both

upon the common pleas and the circuit courts of the state. There, as here, the objection was made that such vesting of jurisdiction was not embraced in the title of the act contrary to constitutional provisions substantially the same as here. In answer to the contention the court said:

. "Is the insertion in an act to regulate the liquor traffic of a section, conferring upon particular courts jurisdiction of cases prosecuted for its violation, within any of the mischiefs intended to be prevented? This question can be answered only in the negative, and such an answer conclusively disposes of this constitutional objection."

See, also, Reams v. State, 23 Ind. 111; Thomasson v. State, 15 Ind. 449.

We are therefore of opinion that that part of section 13 of the act which vests jurisdiction in the Corporation Commission, in the language of this court in Leedy v. Brown et al., 27 Okla. 489, 113 Pac. 177—

"is referable and cognate to the subject expressed in its title, going to make up a complete enactment or resulting as a complement of the main thought therein contained."

It is next urged that if said section is construed as a grant of power, then the power thus delegated to the Corporation Commission is legislative, and hence in conflict with Const. art. 4, sec. 1. It is contended that if said section gives the Commission power to determine whether a particular business, not theretofore controlled by the state, can thenceforth be controlled by it, then such "is a delegation of legislative power of a character not delegable," under the Constitution. It is no argument against the constitutionality of the act that it delegates to the Commission legislative power, for the reason that while article 4, sec. 1, provides:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others"

—the Constitution in establishing the Commission itself otherwise provided, as held in St. Louis & San Francisco R. Co. v. Williams et al., 25 Okla., at page 665, 107 Pac. at page 430, where we said:

"The Corporation Commission, by virtue of the provisions of article 9 of the Constitution, is invested with extraordinary powers, being authorized to exercise not only legislative, but also executive, administrative, and judicial powers."

The Supreme Court of Virginia, in Winchester & Strasburg R. Co. v. Commonwealth. 106 Va. 264, 55 S. E. 692, construing an identical provision. said:

"This court has recognized the validity of the State Corporation Commission as a legally constituted tribunal of the state, clothed with legislative, judicial, and executive powers. Atlantic Coast Line v. Commonwealth, 102 Va. 599; 46 S. E. 911; Norfolk, etc., Co. v. Commonwealth, 103 Va. 294, 49 S. E. 41. In the last-named case, at page 295, it is said: 'The State Corporation Commission, created by constitutional authority, is the instrumentality through which the state exercises its governmental power for the regulation and control of public service corporations. For that purpose it has been clothed with legislative, judicial, and executive powers.' The concentration of these three powers of government in the Corporation Commission is not in contravention of the Bill of Rights. That declaration is part of the Constitution, which expressly provides that 'Except as hereinafter provided, the legislative, executive and judicial departments shall be separate and distinct,' thereby recognizing the well-accepted view that the administration of the government would be wholly impracticable if that general maxim were strictly, literally, and unyieldingly applied in every possible situation."

But let this be a delegation, by the Legislature to the Commission, of whatsoever kind of power it may, the same is expressly authorized. Const. art. 9, sec. 18, provides:

"The Commission shall have the power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in the state, in all matters relating to the performance of their public duties and their charges therefor, * * * and to that end * * * shall, from time to time, * * * enforce against said companies * * * such rates, charges," etc.

Now, while the company in question is neither a transportation nor transmission company, from this delegation of power we catch the idea of what power is intended to be delegated by later constitutional provisions invoked as applicable to the company in question. In the large, this is a delegation of power to the Commission, if properly raised in a proper case before it, to hear and determine the question of whether or not the company whose rates and charges are the subject of inquiry is a transportation or transmission company; this is a delegation of judicial power. When that question is determined in the affirmative, by the Commission as a result of a hearing before it, the matter of fixing the rates or charges for that company by the Commission is an exercise of legislative power. And so where, in the

next section, the Constitution, after clothing the Commission, in all matters pertaining to the control of corporations within the state, with the power of a court of record, and further providing that "the Commission may be vested with such additional powers and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law in connection with the * * * control of corporations," it means that the Legislature was authorized to designate corporations other than transportation and transmission companies and extend the jurisdiction of the Commission over them also, in all matters pertaining to the regulation of their rates, charges, etc., and which the Legislature did by section 13, supra, by prescribing by law, in effect, that whenever any corporation places its business in such a position that the public acquires an interest in its use, and then enters into a combination in restraint of trade, the Commission is vested with judicial power to hear and determine whether such is true; and, if so, to exercise legislative power and proceed and fix its rates and charges, as in the case of transportation and transmission companies. Such was the allegata on which the violated order is based. Turning to the complaints resulting in that order, we find the charge to be:

"That the respective business of each is such that, by reason of its nature and extent, the public must use the same, or its services, and that the consideration by it, taken or given or offered, and the commodities bought and sold are offered, taken by purchase or sale in such manner as to make it of public consequence, or to affect the community at large as to supply and demand, and as to price or rate thereof, and that said business is conducted in violation of section 8800 of Snyder's Compiled Laws of the State of Oklahoma, and that the same is therefore a public business, and subject to be controlled by the state of Oklahoma by the Corporation Commission, as to all its practices, prices, rates, and charges."

We are therefore of opinion that the powers granted by the section under construction were properly delegated, and did not conflict with article 4, sec. 1, of the Constitution, as contended.

While the order complained of is not assailed as unreasonable or unjust upon the ground that there was no evidence reasonably tending to support the finding of an unlawful combination in restraint of trade, it might be well to state that the complaint on which the order was based charged, and the Commission found, that such combination in fact existed among the five gins located in Chandler. It further found:

"That the defendant, Chandler Cotton Oil Company, working in conjunction with the other defendants, had closed down its gin in the town of Chandler with an understanding by the terms of which it was to receive the seed from all cotton purchased by the operators of the gins of the other defendant companies, upon which it agreed to pay a premium or commission of $2 per ton; that subsequent to such agreement between the Chandler Cotton Oil Company and the other defendants, there was an arbitrary advance in the price of cotton ginning to $4 per bale, and thereafter the defendant gin companies refused to allow seed buyers to drive their wagons under the seed hoppers of defendants to take away any cotton seed bought by them in the regular order and course of business transactions."

2. The only assault made upon the order is that the same is unreasonable and unjust, because the price fixed is less than "the cost of the service, and the effect of the order, if enforced, is to deprive appellant of its property without due process of law." In answer to this contention, it is sufficient to say that, as the Commission found by fixing the minimum charge for ginning cotton in Chandler at 50 cents per hundred pounds of lint cotton, with a maximum charge of $2.50 per bale, and by fixing the charge for bagging and ties at approximately $1 a bale, that such was a reasonable charge for the service, the burden of showing is on appellant; for to us the order is prima facie just, reasonable, and correct. And this appellant attempts to do by pointing, not to the order assailed, but to the order appealed from, where the Commission admits " * * * that the price of 50 cents per bale is not sufficient to pay the operating expenses and keep all the gins in Chandler in operation during the ginning season," and insists that the effect of the admission is to concede that the prima facie effect of the order has been overcome. Not so, for the reason that what is thus admitted might be true, and yet the reasonableness and justness of the rate fixed would be, in no wise, affected thereby. In fixing the rate complained of, the sole question before the Commission was whether the charge fixed was a reasonable exaction to be paid by the individual dealing with the company, considering the service to be rendered him by the company. With the question whether or not the rate, when applied to all the gins concerned, would yield sufficient revenue to pay the operating expenses and keep all of them running for any length of time, the Commission had no concern, and hence the effect of such admission is nil. In the Godard Case, supra, Brewer, J., after citing and quoting from numerous authorities, said:

"In Canadian Southern R. Co. v. International Bridge Company (L. R. 8 App. Cas.

723, 731) Lord Chancellor Selborne thus expressed the decision of the House of Lords: 'It certainly appears to their lordships that the principle must be, when reasonableness comes in question, not what profit it may be reasonable for a company to make, but what it is reasonable to charge to the person who is charged. That is the only thing he is concerned with. * * * '"

And later on, speaking for the court, said:

"The authority of the Legislature to interfere by a regulation of rates is not an authority to destroy the principles of these decisions, but simply to enforce them. Its prescription of rates is prima facie evidence of their reasonableness. In other words, it is a legislative declaration that such charges are reasonable compensation for the services rendered, but it does not follow therefrom that the Legislature has power to reduce any reasonable charges because by reason of the volume of business done by the party he is making more profit than others in the same or other business. The question is always, not what does he make as the aggregate of his profits, but what is the value of the services which he renders to the one seeking and receiving such services?"

And so, we say, if the Commission was without power to reduce any reasonable rate or charge because on account of the business done by appellant, it was making more profit than others in the business, it follows that with what appellant, or others, are making or not making, or would or would not make, as a result of the rate when applied, the Commission has no concern; and hence the admission of the Commission under consideration has no force or effect to overcome the presumption that the order fixing the rate assailed is prima facie just, reasonable, and correct.

3. We are therefore of opinion, after an examination of the evidence, that the presumption attending the finding of the Commission, among other things:

"That the claims of ginners that the cost of ginning per bale ranges from about $4 to $6 are erroneous, as a great proportion of such expense is not an expense incident to ginning, but is an expense of cotton buying and selling, and not properly assignable to the cost of ginning," and that "from investigation in other cases and by general inquiry that the prevailing price for custom ginning over the state does not exceed $3.50 per bale, and that where the price of $4 is charged in any particular community is where the large cotton or oil mill companies have a line of gins, which places them virtually in control of the ginning business and enables them to dictate and fix the price of ginning; that such companies as a rule prefer to buy the cotton in the seed in order that they may obtain or control the seed, and that they are

in a position to place the price of custom ginning at a figure that will make it more profitable to the farmer to sell his cotton in the seed than to have it custom ginned and retain or sell his seed, separate from the cotton"

—and the order based thereon, fixing charge for ginning cotton at Chandler, as above set forth, has not been overcome, and that the same should be affirmed; and it is so ordered.

All the Justices concur.