## OKLAHOMA LIGHT & POWER CO. v. CORPORATION COMMISSION et al.

No. 12763—Opinion Filed Oct. 30, 1923.

(Syllabus.)

### 1. Statutes—Subjects and Titles.

Section 57, art. 5, of the Constitution of Oklahoma, providing every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, is satisfied if the act has but one general subject and that is fairly indicated by the title. It may have many details, but if they all relate to the same general subject or object, they are properly included therein. The purpose of this provision of the Constitution was to forbid the Legislature from embracing in any one act two or more unconnected subjects.

### 2. Monopolies—Restraint of Trade—Statute.

Section 1 of the act of June 10, 1908, art. 1, chap. 83, Session Laws 1907 and 1908, page 750, sec. 11017, Comp. Stat. 1921, provides: "Every act, agreement, contract, or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within this state, which is against public policy, is hereby declared to be illegal." Held, said section defines agreements and combinations in restraint of trade and makes the same illegal. Section 11018 to section 11031, inclusive, Comp. Stat. 1921, provide the remedies for the dissolution, prosecution, and punishment for the violation of any of the provisions of section 11017.

### 3. Corporation Commission—Regulation of Virtual Monopolies.

Section 13 of said act, section 11032, Comp. Stat. 1921, provides: "Whenever any business, by reason of its nature, extent, or the existence of a virtual monopoly therein, is such that the public must use the same, or its services, or the consideration by it given or taken or offered, or the commodities bought or sold therein are

offered or taken by purchase or sale in such a manner as to make it of public consequence or to affect the community at large as to supply, demand or price or rate thereof, or said business is conducted in violation of the first section of this article, said business is a public business, and subject to be controlled by the state, by the Corporation Commission or by an action in any district court of the state, as to all of its practices, prices, rates and charges. And it is hereby declared to be the duty of any person, firm, or corporation engaged in any public business to render its services and offer its commodities, or either, upon reasonable terms without discrimination and adequately to the needs of the public, considering the facilities of said business." Held, said section vests the Corporation Commission with jurisdiction to regulate any public business which possesses the statutory characteristics, such as whenever any business, by reason of its nature, extent, or the existence of a virtual monopoly therein, is such that the public must use the same, etc., "or said business is conducted in violation of the first section of this article," and that the word "or," as herein last referred to, is used as a disjunctive, and that the word "and" should not be substituted therefor. Held, further, that the question as to whether a business possesses the characteristics mentioned is subject to regulation by the Corporation Commission, is a question of fact that must be determined from competent testimony on a proper application to regulate such business at a hearing on such application.

**4. Same.—Regulation of Ice Business.**

Whether or not the manufacture, sale, and distribution of ice within any city or community is conducted in such a way and to such an extent as to bring it within the statutory characteristics and subject it to regulation by the Corporation Commission is dependent upon the established facts in a proper hearing before the commission for the regulation of such business, and if upon such hearing the evidence shall disclose such a state of facts as would bring such business within the statute, the commission would have jurisdiction to regulate the rates in the distribution of ice.

Original action in the Supreme Court by the Oklahoma Light & Power Company, a corporation, for writ of prohibition directed to the Corporation Commission prohibiting said commission from exercising or assuming jurisdiction upon the application of George C. Crump, of Holdenville, to regulate the price of ice sold within said city by the petitioner. Writ denied.

Lydick & Hood and Irvin L. Wilson, for plaintiff in error.

E. S. Ratliff, for Corporation Commission.

KENNAMER, J. The Oklahoma Light & Power Company, a corporation, instituted this action in this court against the Corporation Commission for a writ of prohibition directed to said commission prohibiting it from exercising or assuming jurisdiction upon the application of George C. Crump, a citizen of Holdenville, to regulate the price of ice sold by said plaintiff in the city of Holdenville.

The petition filed by Crump before the commission in substance alleged that the city of Holdenville has a population of approximately 5,000 people. That the Oklahoma Light & Power Company operates in said city a plant for the generation of electric current, which it sells, transmits, and distributes to the people generally throughout said city, and that in addition to manufacturing and distributing electric current said company manufactures artificial ice, sells and distributes the same to the people generally throughout said city. That said company is the only one manufacturing, selling, and distributing ice in the city of Holdenville, and that the rates and charges for said ice so sold and distributed are higher rates and charges than are necessary in order to give said company a reasonable rate of return on the value of its property used and useful in the operation of said ice business within said city.

The complainant prayed for a hearing upon his petition, and that upon said hearing the commission, by proper order, fix the rates and charges to be charged by the Oklahoma Light & Power Company for ice sold and distributed in the city of Holdenville. The commission made an order setting said application for hearing on the 7th day of November, 1921. The plaintiff in its application for a writ of prohibition alleges that the commission is without jurisdiction under the act approved June 10, 1908, art. 1, chap. 83, Session Laws 1907 and 1908, page 750 (sections 11017 and 11032, Comp. Stat. 1921), to regulate the price of ice in the city of Holdenville.

Counsel in support of the application for the writ contend that the act of the Legislature, supra, was intended only to regulate unlawful combinations in restraint of trade, and it was not intended to authorize the regulation of a business which happens to be without local competition, and that the title of the act is not broad enough to include a business not amounting to a voluntary and unlawful combination in restraint of trade, and that any provision in the act attempting to regulate a busi-

ness not amounting to an illegal combination in restraint of trade is void.

The title to the act in question is as follows:

"To define a trust, monopoly, unlawful combination in restraint of trade; to provide civil and criminal penalties and punishment for violation thereof and damages thereby caused; to regulate such trusts and monopolies; to promote free competition for all classes of business in the state; and declaring an emergency."

Sections 1 and 13 of the act provide:

1. "That every act, agreement, contract, or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within this state, which is against public policy, is hereby declared to be illegal."

13. "Whenever any business, by reason of its nature, extent, or the existence of virtual monopoly therein, is such that the public must use the same, or its services, or the consideration by it given or taken on offered, or the commodities bought or sold therein are offered or taken by purchase or sale in such a manner as to make it of public consequence, or to affect the community at large as to supply, demand or price or rate thereof, or said business is conducted in violation of the first section of this article, said business is a public business, and subject to be controlled by the state, by the Corporation Commission or by an action in any district court of the state, as to all of its practices, prices, rates and charges. And it is hereby declared to be the duty of any person, firm or corporation engaged in any public business to render its services and offer its commodities, or either, upon reasonable terms without discrimination and adequately to the needs of the public, considering the facilities of said business."

Upon an examination of the title to this act and the provisions of section 13, we are unable to agree with the contention made by counsel for the plaintiff.

Section 57, article 5, of the Constitution, provides:

"Every act of the Legislature shall embrace but one subject which shall be clearly expressed in its title. * * *"

This section of the Constitution is almost verbatim with section 45, article 4, of the Alabama Constitution, and the manifest intention of this mandatory provision is that the title of an act must be such as to fairly suggest and advise as to the subject intended to be covered by the act. All matters fairly and reasonably connected with the act must be indicated by the title. It was intended by this constitutional provision to forbid the Legislature from embracing in any one act two or more unconnected subjects. Anything in an act not germane to the general purpose expressed in the title brings such a statute within this constitutional prohibition. But it must be borne in mind that this provision of the Constitution only requires that the title of an act should express the subject, not the object of the act, and it is no valid objection to a statute that the title fails to plainly indicate the purpose to be accomplished by the act, but the subject must be clearly stated. Vol. 25, R. C. L., sec. 94, page 848; City of Pond Creek et al. v. Haskell, Governor, et al., 21 Okla. 711, 769; Falconer v. Robinson, 46 Ala. 340; State ex rel. v. Rogers et al., 107 Ala. 444, 19 South. 909, 32 L. R. A 520.

The true rule appears to be that:

"It is a sufficient compliance with these provisions that a law has but one general subject or object, which is fairly expressed in its title." 25 R. C. L. p. 848.

Upon a careful consideration of the act in question, we have no difficulty in concluding that the purpose of the act is twofold: First, to define a trust or monopoly and provide for prosecution. Second, the regulation of any business when conducted under any of the following circumstances: Where the business by reason of its nature, extent or existence of a virtual monopoly therein is such as to clothe it with a public interest of such nature that is of legal cognizance, and where the consideration taken by the business or commodities bought or sold therein are offered or taken by purchase or sale in such manner as to materially affect the public as to supply, demand, price or rate thereof, or if the business is conducted so as to come within the statutory characteristics and thereby affects the public interest to such an extent as to be of public consequence, then the statute authorizes the commission to regulate and the title of the act is sufficient to include this general subject, to wit, the regulation of such a monopoly (or business) by prosecution or prescribing a reasonable rate. See Oklahoma Gin Company v. State, 63 Okla. 10, 158 Pac. 629.

However, the act has been placed in the Revised Laws of 1910 in distinct sections, and, as codified, adopted by the Legislature; therefore, the title is no longer of any importance.

In the determination of this action the prime consideration is that of the right of the Corporation Commission to impose regulations upon a company or association

engaged in the business of distributing ice in a community, where such business is the only one of that character in the community, and by reason of the circumstances a virtual monopoly exists in the distribution of the same, and it is a public business by reason thereof. Therefore, our determination of the application for writ of prohibition in the instant case will depend solely upon the jurisdiction of the Corporation Commission to impose regulatory restrictions upon the Oklahoma Light & Power Company in the sale and distribution of ice.

Discussing the extent of this authority granted by the act heretofore quoted, this court, in Shawnee Gas & Electric Company v. Corporation Commission, 35 Okla. 455, 130 Pac. 127, quoting from an opinion of Mr. Justice Hayes, said:

"The sole provision in the act bearing upon this subject is to be found in the foregoing quoted section 13. This section provides that whenever a business shall have certain characteristics, it shall be a public business and shall be subject to the jurisdiction of the Corporation Commission to regulate its practices, rates, and prices; but it does not provide that all public business shall be subject in these respects to such jurisdiction. * * * The first part of said section attempts to define the class of business which the latter part of the section subjects to the jurisdiction of the Corporation Commission and the district courts. It appears to us clear that what was intended was to bring within the jurisdiction of the commission the regulation of charges and rates for services connected with those businesses that violate the acts and are connected, not with business strictly of a public character, such as common carriage, supply of water and gas, but with that class of business in which the owners, without any intent of public service, have placed their property in such a position that the public has an interest in its use.

"The distinction between the class of business and its service intended to be defined by and included in said section and the business and service of public corporations is, we think, well made by Mr. Justice Brewer, who delivered the opinion of the court in Cotting v. Godard, 183 U. S. 79 (22 Sup. Ct. 30, 46 L. Ed. 92), in the following language: 'In the one (referring to property devoted to public service) the owner has intentionally devoted his property to the discharge of a public service. In the other, he has placed his property in such a position that, willingly or unwillingly, the public has acquired an interest in its use. In the one he deliberately undertakes to do that which is a proper work for the state. In the other, in pursuit of merely private gain, he has placed his property

in such a position that the public has become interested in its use. In the one it may be said that he voluntarily accepts all the conditions of public service which attach to like service performed by the state itself; in the other, that he submits to only those necessary interferences and regulations, which the public interest required.' It was this second class of business with which we think section 13 was dealing and intended to place under the jurisdiction of the Corporation Commission and the district courts of the state as to all practices, rates, and charges. If this section grants to the Corporation Commission power to prescribe prices, rates, and charges to be charged by any public service corporation, it confers that power as to all public service corporations, for the language that includes one includes all, and no exception is made. The act confers, not only upon the Corporation Commission jurisdiction to prescribe rates and charges under the conditions therein named, but confers also a like and concurrent power upon the district courts of the state. But the power to prescribe and regulate rates and charges to be observed by some public service corporations, to wit, transportation and transmission companies, was conferred exclusively upon the Corporation Commission by section 18, art. 9, supra, which was not subject to be altered, amended, or repealed until the second Monday in January, 1909. Section 35, art. 9, Const. It would therefore follow, for this reason, if said section includes public service corporations, it would have to be declared in part at least unconstitutional. It would also have to be declared unconstitutional for a second reason. The function of prescribing a schedule of rates and charges to be made by public service corporations in the future for services rendered by them to the public is a legislative function. Reagan et al. v. Farmers' Loan & Trust Co. et al., 154 U. S. 362 (14 Sup. Ct. 1047, 38 L. Ed. 1014); Interstate Commerce Commission v. Cincinnati, N. O. & T. R. Co., 167 U. S. 479 (17 Sup. Ct. 896, 42 L. Ed. 243)."

In the case of Oklahoma Gin Company v. State, 63 Okla. 10, 158 Pac. 629, in the opinion delivered by Mr. Justice Turner, this court said:

"It meant that whenever a business, although organized, it may be, for the purpose of private gain, has placed its property in such a position that the public has become interested in its use, and such business is conducted in violation of section 1 of the act, i. e., governed by a trust, monopoly, or combination or conspiracy in restraint of trade, the same was, by the act, declared to be a public business, and made subject to the control of the Corporation Commission."

The court then quoted that part of the opinion in the case of Shawnee Gas &

Electric Company v. Corporation Commission, supra, as herein quoted. While we consider these opinions essentially correct in principle, yet it is clear from a careful consideration of the same that a much narrower construction is placed upon section 13 of the act, supra, section 11032 Comp. Stat. 1921, than the language used in said section will justify.

In the case of Oklahoma Gin Company v. State, supra, it will be noticed the court substitutes the word "and" in the place of the disjunctive "or" used in the statute, and thereby destroyed the plain intention of the Legislature, as evidenced by the language used. The rule universally adhered to by the authorities is that the word "and" can never be substituted for "or" in a statute when the meaning of the language used in the statute is plain and there is no indication that the word "and" was intended to be used instead of the word "or." It is only where the context or other provisions of the statute, or from other laws relating to the same subject, indicate, and it clearly appears to have been the legislative intent to have used the substituted word, that the court in construing such statute is authorized in substituting. Vol. 25, R. C. L., p. 977; Robinson v. So. Pacific Company (Cal.) 38 Pac. 94, 722, 28 L. R. A. 773; Castor v. McClelland, 132 Iowa, 502, 109 N. W. 1020; Thayer Lbr. Company v. City of Muskegon, 157 Mich. 424. The word "or" is ordinarily disjunctive, but occasionally, to avoid absurdity, the courts construe it equivalent to "and." State ex rel. Rich v. Steiner, 160 Wis. 175; Gar Creek Drainage District v. Wagner (Ill.) 100 N. E. 190. But, where it is evident that the word "or" was intended to have its ordinary meaning, it should not be construed to mean "and." State ex rel. Caldwell v. Hooker, County Judge, 22 Okla. 712, 98 Pac. 964; Dumont v. United States, 98 U. S. 142.

In the construction of statutes courts do not exercise legislative powers, and their sole function is to determine from the language used the intention and meaning of the statute.

We are clearly of the opinion that the first section of the act defined an unlawful agreement, contract, or combination, in the form of a trust or a conspiracy in restraint of trade or commerce and declared and made the same illegal, and in subsequent sections of the act provided for the prosecution, dissolution, and punishment of such combination. It will here be observed if such a trust is dissolved and ~~

strained from doing business the regulation provided for in section 13 would have no application to such a business. Section 13 of said act plainly provides for the regulation of any business which by reason of its nature and extent, or in the event of a virtual monopoly therein, is such that the public must use the same or its services, or such business sells commodities in such a manner as to make it of public consequence so as to affect the community at large as to supply, demand, or price, or rate thereof—that then such business is subject to regulation. The right to regulate under section 11032 of the statutes depends upon the established facts in each particular case.

In other words, the business must possess the statutory characteristics. But, under the latter provision in the statute— or said business is conducted in violation of the first section of this act—such business also may be regulated, for then it is immaterial whether said business possesses the statutory characteristics described in the first part of section 13 of the act, for the reason such business comes within the definition of an unlawful agreement or combination which demands the exercise of the regulatory power of the state. If the business violates section 1 of the act, so as to constitute an unlawful trust, the same may be proceeded against in the district court and subjected to regulation by restraining such business from being conducted in violation of the act. This would be a regulation by the court, although the court would be without power to fix a rate, as that is a legislative function, but the courts at common law had the power to regulate a business in the form of a monopoly to prevent injury.

It is clear from section 13 of the act that it was the legislative intent to vest the Corporation Commission with power to regulate a business by reason of its nature and extent that makes it of public consequence or affects the public interest in such a way as to demand regulation, or where such business is of such a nature as to result in a virtual monopoly therein to the persons engaged in such business to such an extent as to place it within the power of such persons to control the supply and demand for the practices, prices, rates, and charges of such business.

It is our conclusion that the business subjected to regulation under the first part of section 13 of the act, supra, falls within that class of business described as the third class subject to public regulation by

Chief Justice Taft in the case of Wolff Packing Company v. The Court of Industrial Relations of Kansas, 262 U. S. 522, 43 Sup. Ct. 630, 67 L. Ed. —, wherein the court held:

"Businesses which though not public at their inception may be fairly said to have risen to be such and have become subject in consequence to some government regulation. They have come to hold such a peculiar relation to the public that this is superimposed upon them. In the language of the cases, the owner, by devoting his business to the public use, in effect grants the public an interest in that use and subjects himself to public regulation to the extent of that interest, although the property continues to belong to its private owner and to be entitled to protection accordingly. Munn v. Illinois, 94 U. S. 113; Spring Valley Water Works v. Schottler, 110 U. S. 347; Budd v. New York, 117 N. Y. 1, 27; s. c., 143 U. S. 517; Brass v. Stoeser, 153 U. S. 391; Noble State Bank v. Haskell, 219 U. S. 104; German Alliance Insurance Company v. Lewis, 233 U. S. 389; Vandyke v. Geary, 244 U. S. 39, 47; Block v. Hirsh, 256 U. S. 135.

"In a sense, the public is concerned about all lawful business because it contributes to the prosperity and well being of the people. The public may suffer from high prices or strikes in many trades, but the expression 'clothed with public interest,' as applied to a business, means more than that the public welfare is affected by continuity or by the price at which a commodity is sold or a service rendered. The circumstances which clothe a particular kind of business with a public interest, in the sense of Munn v. Illinois and the other cases, must be such as to create a peculiarly close relation between the public and those engaged in it, and raise implications of an affirmative obligation on their part to be reasonable in dealing with the public."

It may be safely stated that it is that class of business which is inherently of such a nature as to affect the public, and which by its peculiarly close relation to the public, and the dependence of the public upon the service of such business, and on which rests the duty of being reasonable with the public, that may be considered within the regulatory power of the state. Ordinarily the power of public regulation is not sustained by the courts unless there has been a legislative declaration of the public interest, and such declaration is most persuasive. But, bearing in mind the constitutional guarantees enjoyed by all persons engaged in any lawful business, ultimately the determination that a business is clothed with such a public interest as to justify regulation cannot be said to be a matter of legislative discretion solely, but ultimately is a judicial question. Under the provisions of the statutes in question the Legislature has determined that certain business possessing certain characteristics is subject to regulation, and in any given case arising under the statute the power to regulate must ultimately depend upon the established facts, together with the inherent nature of the business. In applying the statute to any given state of facts, the nature of the business will be considered, its relation to the public, and the abuses sought to be remedied.

The manufacture, sale, and distribution of ice in many respects closely resemble the sale and distribution of gas as fuel, or electric current, and in many communities the same company that manufactures, sells, and distributes electric current is the only concern that manufactures, sells, and distributes ice, and by reason of the nature and extent of the ice business it is impracticable in that community to interest any other concern in such business. In this situation, the distributor of such a necessity as ice should not be permitted by reason of the impracticability of any one else engaging in the same business to charge unreasonable prices, and if such an abuse is persisted in, the regulatory power of the state should be invoked to protect the public. As said by Chief Justice Taft, in Wolff Packing Company v. Court of Industrial Relations of Kansas, supra:

"* * * When the public becomes so peculiarly dependent upon a particular business that one engaging therein subjects himself to a more intimate public regulation is only to be determined by the process of exclusion and inclusion. * * *"

It may be here observed that, although a business is clothed with a public interest, this is not determinative of what regulation may be imposed upon such business. The extent of regulation must be determined from the character of the business, and the extent of such regulation must always be reasonable in view of the private rights of the owner, and the regulation should only be to the extent of correcting such abuses as have resulted in injury to the public. It may be contended that if the manufacture, sale, and distribution of ice are subject to regulation for the reason the distributor happens to be the only one engaged in the business in a particular community, a mercantile establishment, which happens to be the only one in a community, would be subject to regulation for the same reason. The fallacy of such a contention is apparent. Ice is an

article of common household necessity, the supply of which must ordinarily be purchased every day. Ordinary articles of merchandise may be purchased at a convenient time and in sufficient supply for ordinary use for considerable time.

It is our conclusion that the Corporation Commission has jurisdiction under the statutory law of this state to determine the necessity of regulating the price of ice where the evidence establishes that the business comes within the statutory characteristics of section 11032. Therefore, the application for writ of prohibition is denied.

JOHNSON, C. J., and KANE, BRANSON, and HARRISON, JJ., concur.