The Attorney General has received your request for an Opinion wherein you ask, in effect, the following questions: 1. Is Rule 12-3-A of the Oklahoma Insurance Department concerning the replacement of whole life insurance which requires an agent who sells term life insurance and the intended insurer to report to the life insurance company, which issued the whole life policy to be replaced, the intent to replace such whole life policy with another form of life insurance policy violative of the First Amendment to the Constitution of the United States by infringing on the insured's right of association and privacy? 2. Is Rule 12-3-A violative of the Fourteenth Amendment to the Constitution of the United States in that it unreasonably discriminates between the insurer which has the existing life insurance in force and the insurer seeking to replace such life insurance policy with another form of life insurance policy ? 3. Does it render Rule 12-3-A violative of the Fourteenth Amendment guarantee of equal protection under the law, if in some instances agents and/or insurers replacing whole life insurance policies do not report to the insurers whose policies are being replaced while other agents and/or companies always make such required reports? 4. Is Rule 12-3-A totally unreasonable, arbitrary and capricious for having no rational basis to the purported State interest of protecting the insured? 5. Is Rule 12-3-A violative of the Sherman Act, 15 U.S.C.A. 1 et seq. (1890) and/or 79 O.S. 1 [79-1] (1971) by reason of the reports required of agents and/or insurers when replacing whole life insurance policies issued by other insurers due to resulting restraints on trade and competition? For purposes of this Opinion neither the virtues nor the disadvantages of either term life insurance or whole life insurance advocated by proponents of each have been considered nor have any relevance to your inquiry as to applicable State and federal law. In answering your inquiry it is necessary to review the nature and history of insurance regulation by the State of Oklahoma. Regulation of the insurance business has long been recognized as a necessary and appropriate attribute of sovereignty. In Welch v. Maryland Casualty Co., 47 Okl. 293, 147 P. 1046 (1915) the Supreme Court held: "That the State in exercise of its police power may fully and completely regulate the insurance business is no longer a debatable question. The proposition is too well settled to require citation of authority to sustain it." Until 1944 the field of insurance regulation was generally left to the several states with little federal intrusion. However, a landmark case, United States v. Southeastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, reh. den. 323 U.S. 811, 65 S.Ct. 26, 89 L.Ed. 646 (1944) held that a group of fire insurance underwriters were subject to the Anti-Trust Act of 1890 or Sherman Act. Subsequent, thereto the Congress enacted the McCarran Act,15 U.S.C.A. 1011-1015 (1945). The McCarran Act and its scope is best summarized by 1011 and 1012 which provide as follows: "1011 Congress declares that the continued regulation and taxation by the several states of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several states. "1012 (a) The business of insurance, and every person engaged therein shall be subject to the laws of the several states which relate to the regulation or taxation of such business. "1012 (b) No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance. Provided that after June 30, 1948, the Act of July, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent such business is not regulated by State Law." 36 O.S. 1201 [36-1201] et seq. (1971) is legislation enacted in accordance with the declaration and intent expressed by Congress in the McCarran Act. 36 O.S. 1201 [36-1201] et seq., supra, define or provide for determination of and prohibition of various unfair and deceptive practices by insurers and agents. 36 O.S. 1204 [36-1204], inter alia prohibits: ". . . Making any misrepresentations to any policyholders insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance." Under 36 O.S. 1206 [36-1206] the Insurance Commissioner is granted broad powers to secure all books, papers, records, correspondence, and/or all other documents he deems relevant to his inquiries under 36 O.S. 1204 [36-1204], supra, from the insurers and/or agents. Such inquisitorial powers are to be employed against those engaged in the insurance business not the general public. It is well settled that for a company to engage in the insurance business in this State and under license from the State that such company must accept fully and without reservation all obligations and burdens imposed by the laws of the State. Miller v. Prudential Insurance Co. of America, 180 Okl. 555, 71 P.2d 542
(1937); Carlin v. Prudential Insurance Co. of America,175 Okl. 398, 52 P.2d 721 (1935). Thus, the various transactions between members of the general public and their respective insurers and/or agents constitute records which insurance regulation requires to be open to the Insurance Department and the Insurance Commissioner. There is little, if any, invasion of right to privacy of any member of the general public, and there is a compelling reason to sustain such regulation, protection of the public. Welch, supra. Members of the general public can and may associate freely with anyone, whether engaged in the insurance business or otherwise and are free to replace their whole life coverage as they so desire with whatever type of insurance they so desire. The only burden placed on any party is placed upon an insurance company and/or its agent. Such insurer and/or agent can rightfully be required to assume such burden if it undertakes to replace existing whole life insurance. Miller v. Prudential Insurance Co. of America, supra; Carlin v. Prudential Insurance Co. of America, supra. The subject of insurance is largely a matter of contract by and between an insurance company and the insured. Wiley v. Travelers Insurance Co., 543 P.2d 1293 (Okl. 1975). However, without further citation of authority it is apparent that any insurance company and/or agent seeking to secure a benefit such as premium or commission consideration can be required to comply with Rule 12-3-A as a condition precedent to replacing existing whole life or cash value insurance, to insurance that there was no misrepresentation to induce such replacement. It has been held that cash surrender value or policy loan value, and other incidents of ownership of whole life insurance policies are valuable rights subject to protection by the state regulatory agency, by rule and/or regulation. (Citations omitted.) Therefore, it appears clear that Rule 12-3-A of the Oklahoma Insurance Department concerning the replacement of whole life insurance which requires an agent who sells term life insurance to replace whole life and the intended insurer to report to the life insurance company which issued the existing whole life insurance to be replaced, the intent to replace such whole life policy with another form of life insurance policy is not violative of the First Amendment to the Constitution of the United States. There is no infringement on the insured's right of association and privacy as all burdens and restraints are upon the agent and/or insurance company doing business in Oklahoma. The rule simply requires insurance companies to "police" each other. Insurers and/or insurance agents are not made part of any class or sub-class by Rule 12-3-A. It is apparent that at any one time an insurance company and its agent may be both the replacing company or agent and the company or agent being replaced. It is the conduct or operations of an insurance company or agent which determines which class under any given facts or circumstances it may come within at any given time. The rule upon plain reading, seems clearly within the Department's discretion and power, expressed or inferred by necessary implication, from 36 O.S. 1201 [36-1201] et seq., supra. Such sections require the Insurance Department to protect policyholders from harm due to misrepresentation. Such intent provides sufficient reason to sustain validity of the rule, and give rise to the presumption that such rule is proper. The law is most clear that insurers and/or insurance agents do not have the unfettered right to do business in Oklahoma and are subject to regulation by and under the police power of the State. Welch, supra. The rule on its face does not purport to exclude any insurance company or companies, or any insurance agent or agents from its application. Thus all insurance companies and agents licensed to conduct insurance business in Oklahoma are within the ambit of such rule and equally subject to its prohibitions and restraints in like manner. Therefore, it is apparent that Rule 12-3-A is not violative of the Fourteenth Amendment to the Constitution of the United States, in that it does not unreasonably discriminate between the insurer which has existing whole life insurance in force, and the insurer seeking to replace such life insurance policy with another form of life insurance policy. In your Opinion request you further question whether the Fourteenth Amendment is violated, as some replacing insurance companies and their agencies always report to companies and agents and other replacing insurance companies and their agents never make such reports. Rule 12-3-A, does not excuse any company of agent from compliance therewith and thus all are subject to enforcement actions and sanctions by the Insurance Commissioner for violations of this Rule. Non-compliance with Rule 12-3-A by some companies and agents, whether or not discovered by the Commissioner, immediately, upon annual examination or at some other time does not as a matter of law constitute selective enforcement against some companies or agents. There is no evidence that the Insurance Commissioner in his enforcement of Rule 12-3-A intentionally or purposefully discriminates against any agent or company or group of agents or companies as required by the rule in Snowden v. Hughes, 321 U.S. 1, 64 S. 397, 88 L.Ed. 497
(1943). There is also the general presumption recognized in the law that all state officials, including the Insurance Commissioner, properly perform their duties. St. Louis S.F.R. Co. v. Messenger, 26 Okl. 590, 110 P. 893
(1910). There is further, no evidence to show that Rule 12-3-A of the Insurance Department you question is arbitrary, unreasonable or capricious, and thus in accordance with, State v. Parham, 412 P.2d 142 (Okl. 1966). Rule 12-3-A, must be presumed to be valid and reasonable. There is no question that the State of Oklahoma can regulate the life insurance business and agents engaged therein. Therefore, it is readily apparent that in the absence of evidence to the contrary, the enforcement of Rule 12-3-A does not constitute selective enforcement, nor is Rule 12-3-A on its face arbitrary, capricious and unreasonable. Your last inquiry pertains to the possibility that Rule 12-3-A is violative of the Sherman Act and/or 79 O.S. 1 [79-1] et seq. (1971). By virtue of the McCarran Act, supra, it is apparent that the regulatory actions of the State of Oklahoma, by and through its constitutionally elected, qualified and serving Insurance Commissioner are exempt from application of the Sherman Act to the extent that the State regulates the insurance business. Meicler v. Aetna Cas. Sur. Co.,506 F.2d 732 (5th Cir. 1975); U.S. v. Sylvanus, 192 F.2d 96
(7th Cir. Ill., 1951); cert. den. 342 U.S. 943,72 S. Ct. 555, 96 L.Ed. 701. Under Rule 12-3-A, the State has undertaken to regulate issues arising' from induced replacement of whole life insurance by misrepresentation by an insurance company or agent. Even actions by a State insurance regulatory body or official which create a situation otherwise within the scope of the Anti-Trust Acts has been held to be exempt from the application of such laws as "State Action". Meicler v. Aetna Cas. Sur. Co., supra. 79 O.S. 1 [79-1] (1971) has been construed by the Supreme Court in Oklahoma Light Power Co. v. Corporation Commission, 96 Okl. 19, 220 P. 54 (1923) as follows: "Upon a careful consideration of the act in question, we have no difficulty in concluding that the purpose of the act is two fold: First, to define a trust or monopoly and provide for prosecution. Second, the regulation of any business when conducted under any of the following circumstances: Where the business by of its nature, extent or existence of a virtual monopoly therein is such as to clothe it with a public interest of such nature that is of legal cognizance, and where the consideration taken by the business or commodities bought or sold therein are offered or taken by purchase or sale in such manner as to materially affect the public as to supply, demand, price or rate thereof, or if the business is conducted so as to come within the statutory characteristics and thereby affects the public interest to such an extent as to be of public consequence, then the statute authorizes the commission to regulate . . . See Oklahoma Gin Company v. State, 63 Okla. 10, 158 P. 629." As the Court noted in Oklahoma Light Power, supra, 79 O.S. 1 [79-1] et seq., supra, define a trust, monopoly, unlawful combination in restraint of trade, provide civil and criminal penalties for violations, and regulation by the State of businesses, if such come within the statutory characteristics, and thereby affect the public interest to such an extent as to be of public consequence. It is therefore most clear that 79 O.S. 1 [79-1] et seq., supra, were not designed nor intended to destroy nor impede State regulation of business, but to prohibit the evils arising by restraints of trade, unlawful and monopolistic acts by business, and regulation by the State of businesses of this nature, not otherwise regulated. The Supreme Court of Oklahoma has at no time since enactment of 79 O.S. 1 [79-1] et seq., supra, in 1910, held such Act applicable to any business to the extent such business was otherwise regulated by specific statutory provisions. Such regulation exists for insurance business which is regulated by the Insurance Department (Insurance Commissioner and/or State Board For Property and Casualty Rates) pursuant to Title 36, Oklahoma Statutes (The Insurance Code). Therefore, it is apparent that the insurance regulatory functions of the State of Oklahoma by and through the Insurance Department are not within the ambit of 79 O.S. 1 [79-1] et seq., nor do the provisions of 1 et seq. have any application whatsoever to the insurance business to the extent that such business is specifically regulated under the Insurance Code. Insurance Company of North America v. Welch, 49 Okl. 620, 154 P. 48 (1916). It is therefore the official Opinion of the Attorney General that your questions be answered as follows: 1.) Rule 12-3-A of the Oklahoma Insurance Department concerning the replacement of whole life insurance which requires an agent who sells term life insurance and the intended insurer to report to the life insurance company which issued the whole life policy to be replaced, the intent to replace such whole life policy with another form of life insurance is not violative of the First Amendment to the Constitution of the United States as it does not infringe on the insured's right of association and privacy. 2.) Rule 12-3-A of the Oklahoma Insurance Department is not violative of the Fourteenth Amendment to the Constitution of the United States as it does not unreasonably discriminate between the insurer and/or its agent which has the existing whole life insurance in force, and the insurer and/or its agent seeking to replace such whole life insurance policy with another form of life insurance policy. 3.) Rule 12-3-A of the Oklahoma Insurance Department is not violative of the Fourteenth Amendment guarantee of equal protection under the law, if in some instances agents and/or insurers replacing whole life insurance policies do not report to the insurers whose policies are being replaced while other agents and/or companies always make such required reports. 4.) It cannot be said as a matter of law that Rule 12-3-A of the Insurance Department is unreasonable, arbitrary and capricious for having no rational basis to the purported State interest of protecting the insured from misrepresentation to induce insured's to replace existing whole life insurance. 5.) Rule 12-3-A is not violative of the Sherman Act, 15 U.S.C.A, 1 et seq. (1890) and/or 79 O.S. 1 [79-1] et seq. (1971) by reason of the reports required of agents and/or insurers when replacing whole life insurance policies issued by other insurers due to resulting restraints, if any, on trade and competition. (RICHARD F. BERGER) (ksg)