### BROWN v. MILLER et al.

No. 10984—Opinion Filed May 22, 1923.

(Syllabus.)

**1. Infants—Action to Cancel a Deed—Minority—Burden of Proof.**

In an action to recover possession of land, where the plaintiff alleges he was a minor, on the date of the execution of a deed by him, the burden of proof is upon such minor to establish his minority.

Record examined, and held, that the judgment of the trial court determining the issue of minority adversely to the plaintiff will not be disturbed.

### 2. Statutes—Rules of Construction—Enactments as a Whole—Intention of Statute—Implied Repeal.

It is a cardinal rule in the construction of statutes that the intention of the lawmakers, when ascertained, must govern, and in ascertaining the intention of lawmakers enacting various legislative enactments relating to the same subject, such enactments shall be construed together and given effect as a whole, if possible, in order to accomplish the purpose for which such acts were passed.

The rule is established, a thing within the intention is regarded as within the statute, though not within the letter; and a thing within the letter is not within the statute, unless within the intention.

Implied repeals are not favored.

### 3. Indians—Removal of Restrictions on Alienation—Statutes—Repeal.

Section 19 of the act of April 26, 1906 (34 Stat. L. 137), providing:

"That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole Tribes shall have power to alienate, sell, dispose of, or incumber in any manner any of the lands allotted to him for a period of 25 years from and after the passage and approval of this act, unless such restrictions shall, prior to the expiration of said period, be removed by act of Congress."

—held to be enacted for the purpose of reimposing restrictions upon the voluntary alienation of the surplus allotment of the members of the Five Civilized Tribes, and that said section did not repeal that part of the act of April 21, 1921 (33 Stat. L. 204), authorizing the Secretary of the Interior to remove restrictions from individual members of said tribes as to their surplus allotment after a full investigation of such individual case and a determination that it was to the best interest of said allottee that the restriction be removed. The case of Deere v. Neumeyer et al., 54 Okla. 377, 154 Pac. 350, is overruled.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by Clarence Brown against J. E. Miller et al. in ejectment. Judgment for defendants, and plaintiff brings error. Affirmed.

C. F. Green and Hatchett & Semple, for plaintiff in error.

Tom D. McKeown, Robert Wimbish, and W. C. Duncan, for defendants in error.

Hatchett & Ferguson and W. Y. Dilley, amici curiae.

KENNAMER, J. The plaintiff in error, Clarence Brown, is a full-blood Chickasaw Indian, and the land involved is a portion of his surplus allotment. By order of the Secretary of the Interior on April 20, 1906, the restrictions upon alienation of the said land were removed, to be effective 30 days from the date of the order. On May 21, 1906, the plaintiff in error executed and delivered a deed conveying the said land to Stillwell H. Russell. The defendants in error are present or past owners of the said land in a chain of title from said Stillwell H. Russell. The action was commenced by the plaintiff in error, as plaintiff below, to set aside all of said conveyances and to recover the land. The trial court held the allottee's deed of May 21, 1906, to be valid and rendered judgment for the defendants, from which judgment this appeal is prosecuted.

Counsel for plaintiff in error present two propositions for consideration. The first pertains to a question of proof of age of the allottee at the time of executing his conveyance of said land. The second denies the validity of the deed executed by the allottee pursuant to the removal of restrictions by the Secretary of the Interior, effective 30 days after the date of the order of removal, because of the passage of the act of Congress of April 26, 1906, prior to the expiration of the 30 days, which act, it is contended, superseded and nullified the order of the Secretary of the Interior. Hence, two questions are presented on this appeal for our determination by the plaintiff in error under his assignments of error.

The parties appear here as they appeared in the trial court, and will be referred to as plaintiff and defendants.

The first proposition discussed by counsel for the plaintiff is that, the trial court erred in rendering judgment for the defendants, for the reason the evidence establishes the fact that the allottee, on the date he executed the deed purporting to convey 40 acres of his surplus allotment, was a minor, and, for that reason, the deed is void. The only evidence offered by the plaintiff on the issue was the certified copy of the enrollment record. No birth affidavits were attached to this record. The date of application for enrollment, as shown by the record, was September 3, 1898. The record at one place

shows the allottee 12 years old, and at another place 16 years old, on the date of application for enrollment. No oral testimony was offered as to the exact age of the allottee. It is clear that it is impossible to tell just when the allottee reached his 21st birthday.

The burden of proof was on the plaintiff to establish his minority on the date of the execution of the deed, and it is our conclusion that the evidence offered was insufficient to establish his plea of minority, and we would not, therefore, be justified in disturbing the judgment of the court determining this question adversely to him.

The next question presented is whether or not, under section 19 of the act of April 26, 1906 (34 Stat. L. 137), the Secretary of the Interior was deprived of his power to remove restrictions from the surplus allotments of full-blood Indians of the Five Civilized Tribes, as authorized by the act of Congress April 21, 1904 (33 Stat. L. 204).

The applicable part of the act of April 21, 1904, authorizing the Secretary of Interior in removing restrictions, reads:

"All of the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are except as to homesteads, hereby removed, and all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian Agent at the Union Agency in charge of the Five Civilized Tribes, if said agent is satisfied upon a full investigation of each individual case that such removal of restrictions is for the best interest of said allottee. The finding of the United States Indian Agent and the approval of the Secretary of the Interior shall be in writing and shall be recorded in the same manner as patents for lands are recorded."

Section 19 of the act of April 26, 1906 (34 Stat. L. 137), which it is contended repealed the act of 1904, authorizing the Secretary of the Interior to remove restrictions, reads:

"That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole Tribes shall have power to alienate, sell, dispose of, or incumber in any manner any of the lands allotted to him for a period of 25 years from and after the passage and approval of this act, unless such restriction shall, prior to the expiration of said period, be removed by act of Congress."

It is a cardinal rule in the construction of statutes that the intention of the lawmakers, when ascertained, must govern, and in ascertaining the intention the lawmakers, in enacting various legislative enactments relating to the same subject, such enactments may be construed together and given effect as a whole, if possible, in order to accomplish the purpose for which such acts were passed.

The primary object of all interpretation of law is to ascertain the true intent and meaning of the lawmaking authority. Allen v. Oliver, 31 Okla. 356, 121 Pac. 226.

The intention, once ascertained, will control in construing and applying statutes, though not within the letter of the statute. The rule is, a thing within the intention is regarded as within the statute, though not within the letter; and a thing within the letter is not within the statute, unless within the intention. Allen v. Oliver, supra; Town of Eufaula v. Gibson et al., 22 Okla. 507, 518, 98 Pac. 565, 569; People ex rel. Keeney v. City of Chicago, 152 Ill. 546, 38 N. E. 744.

The Supreme Court of the United States, in Tiger v. West Investment Company, 221 U. S. 286, 55 L. Ed. 738, said:

"When several acts of Congress are passed touching the same subject-matter, subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject."

Implied repeals are not favored. In determining whether or not a prior act is repealed by a subsequent act where the prior act and the subsequent act may be given force and effect according to the terms and under any circumstances, it will be held that the subsequent act does not repeal the prior act. Newman v. Lake, 70 Kan. 848, 79 Pac. 675; S. T., L. B. & M. Ry. Co. v. Marcofich (Tex. Com. App.) 221 S. W. 582.

With these well-established rules of construction in mind, we will consider section 19 of the act of Congress of April 26, 1906, with the view of determining whether it was the intention of Congress to repeal the act of April 21, 1904, vesting the Secretary of the Interior with power to remove restrictions.

In order to comprehend the situation that existed in regard to the alienation of the Indian lands within the Five Civilized Tribes on the date of the passage of the act of April 26, 1906, it is well to consider the prior laws and treaties fixing the status of the members of the Five Civilized Tribes and of their allotted lands.

The law of the Choctaw and Chickasaw Nation is found in the Supplemental Treaty of July 1, 1902 (32 Stat. 641). Section 12 of said statute provided for the selection of said allotment. dividing said allotment into a homestead and surplus. Section 16 of said statute authorized the members of said tribes to alienate the surplus part of the allotment as follows: One-fourth in acreage in one year from date after issuance of patent: one-fourth in three years and the balance in five years; in each case from date of patent.

In the Supplemental Creek Treaty of June 30, 1902 (32 Stat. 500), it was provided in section 16 for the alienation of the allotments of the members of the tribe five years from the date and approval of the Supplemental Agreement, with the exception of the homestead, which was to remain nontaxable, inalienable, and free from any incumbrances whatsoever for 21 years.

In the Cherokee Agreement of July 1, 1902 (32 Stat. 716), in section 15 thereof, it was provided for the alienation of all the allotments of such members, except a homestead five years after issuance of patent.

The Seminole Agreement act of July 1, 1908 (30 Stat. 567), provided that when the tribal government should cease to exist the principal chief last elected by said tribe should execute under his hand and the seal of the nation, and deliver to such allottee, a deed conveying to him all of the right, title, and interest of the said nation, and the members, thereof, in and to the lands so allotted to him. That such deed should be approved by the Secretary of the Interior, and operate as a relinquishment of all the right, title, and interest of the United States in and to the land embraced in said conveyance. It required such allottee to designate one tract of 40 acres to be by the terms of the deed made inalienable and nontaxable as a homestead in perpetuity.

It is clear from an examination of these treaties or statutes that the surplus allotments of these restricted Indians would have soon become alienable and that by voluntary sales the incompetent full-bloods would have soon alienated all of this class of lands.

On the date of the passage of the act of April 26. 1906, in many instances the restrictions on portions of certain allotments of many members of the tribes had expired, and no doubt the Congress was fully advised of the fact that these lands from which restrictions were falling by operation of law were being rapidly disposed of at grossly inadequate prices. Hence, the Congress, in order to remedy the situation, reimposed restrictions on the alienation of such lands in order to prohibit the voluntary sale of such lands by all full-blood members of the various tribes, as authorized under the provisions of the various treaties.

If we should give to section 19 of the act its literal meaning, its language is sufficiently broad to repeal that part of the act of April 21, 1904. authorizing the Secretary of the Interior to remove the restrictions from such individual Indians as he might determine to be competent to transact their own business. But the language of the act nowhere discloses an intention upon the part of the Congress to deprive the Secretary of the Interior of this power except its apparent repugnancy to the former act of April 21, 1904. However, a consideration of the subsequent acts of Congress makes it plain that Congress had no intention of depriving the Secretary of the Interior of this power of investigating individual Indians, and upon ascertaining their competency to deal with such lands to relieve them of the restrictions imposed upon them by law.

The act of June 21, 1906 (34 Stat. 325), made an appropriation to cover the expenses incurred by the Secretary of the Interior in removing restrictions, and contains the following language:

"To enable the Secretary of the Interior to carry out the provisions of the act approved April twenty-first, nineteen hundred and four, for the removal of restrictions upon the alienation of lands of all allottees of the Five Civilized Tribes, eighteen thousand dollars: Provided, That so much as may be necessary may be used in the employment of clerical force in the office of the Commissioner of Indian Affairs."

It is important to observe that this act was passed within two months after the passage of the act of April 26, 1906, and authorizes the expenditure of the funds "for the removal of the restrictions upon the alienation of lands of all allottees." It would seem that Congress inserted the word "all" in order to remove any doubt as to the intention of Congress in the matter of removal of restrictions by the Secretary of the Interior.

The act of May 27, 1908, provided:

"The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore."

This court, in the case of Crosbie v. Partridge, 85 Okla. 186, 205 Pac. 758, had under consideration the question of whether or not

section 19 of the act of April 26, 1906, repealed the act of Congress of March, 3, 1908 (32 Stat. 982), authorizing a full-blood Indian to have a sale of her allotment made for town-site purposes under the regulations of the Interior Department. In an opinion delivered by Justice McNeill, the court held:

"The first question for consideration is whether sections 19 and 29 of the act of April 26, 1906, had the force and effect of repealing the act of March 3, 1903.

"When we consider that the first act was special in its application, and the latter general, there is no inconsistency between them. These acts can be reconciled, and both given force and effect, one which is special and particular, and prescribes its own procedure, which is different from the general statute. * * * If Congress intended the general law to repeal the special law, it could have clearly expressed that fact by referring to the act, or providing a repealing clause broad enough to include all former acts; but the repealing clause adopted in the instant case implies very strongly that there may be acts on the same subject which are not repealed."

See Washington v. Miller, 235 U. S. 422, 59 L. Ed. 295.

While the act of April 21, 1904, is a general act, that part of the act vesting the Secretary of the Interior with power to remove restrictions is special in its application, and conferred upon the Secretary a special power applicable to a particular class of Indians—such Indians as he found upon investigation to be competent.

Section 19 of the act of 1906 was a general act applicable to the Indians in general, and no doubt was intended to apply to the voluntary alienation of the surplus lands of such Indians, and the acts viewed in this light are subject to a harmonious construction affording to each its particular field of operation and the evident intention of the Congress given effect.

Another important consideration strongly supporting this conclusion is that it has been the settled policy of the Congress for a long period of time in dealing with the Indians and their property to impose upon the Secretary of the Interior the duty of protecting them in the disposition of their properties under proper rules and regulations. Furthermore, it is a well-established rule in the construction of statutes that the terms employed should not receive the interpretation which conflicts with the acknowledged principles of justice and equity, where a construction may be applied which is in harmony with those principles, unless the statute is so clear as to exclude the application of the rules of construction. U. S. v. Smith et al., 266 Fed. 740.

It is also a well-established rule of law that courts will go far to sustain bona fide titles acquired in the utmost good faith, such as the purchase of restricted Indian lands in accordance with the rules and regulations promulgated in conformity with a governmental policy. See Thompson v. Tolmie, 2 Pet. (U. S.) 157, 7 L. Ed. 381.

H. B. Burrow, on May 3, 1923, filed in this court his plea of intervention in this case and motion to be a party to this action. His motion to be made a party by order of this court has been sustained. It appears from his plea of intervention that on the 8th day of November, 1921, Clarence Brown, plaintiff in the action, executed and delivered to H. B. Burrow a warranty deed attempting to convey to Burrow the land involved in this action. The deed was made subsequent to an order made by the Secretary of the Interior, dated the 6th day of October, 1921, removing the restrictions from the land in controversy. We deem it sufficient to say that, in view of the conclusion reached herein, the order of the Secretary of the Interior attempting to remove restrictions from the land which had been sold and unrestricted, of which the allottee had divested himself of title under a valid conveyance, was a nullity, and Burrow, the grantee in the deed, having purchased the land while this action was pending, was concluded by the judgment rendered by the trial court.

It is our conclusion that the authority of the Secretary of the Interior to remove restrictions was not intended to be destroyed by the act of 1906. That in principle this identical question was decided adversely to the contentions of counsel for the plaintiff in the case of Crosbie v. Partridge, supra, and the rule in that case is in direct conflict with the rule announced in Deere v. Neumeyer et al., 54 Okla. 377, 154 Pac. 350. Therefore, in so far as the case of Deere v. Neumeyer conflicts with the rule herein announced, it is overruled, and the judgment of the trial court herein is affirmed.

JOHNSON, C. J., and McNEILL, NICHOLSON, BRANSON, HARRISON, and MASON, JJ., concur. COCHRAN, J., dissents.