## QUINTON RELIEF OIL & GAS CO. v. CORPORATION COMMISSION et al.

No. 14080—Opinion Filed Feb. 19, 1924.

Rehearing Denied March 11, 1924.

(Syllabus.)

1. Statutes—In Pari Materia—Construction.

In construing various legislative enact-

ments relating to the same subject, such enactments shall be construed together and given effect as a whole, if possible, in order to accomplish the purpose for which such acts were passed.

## 2. Same — Implied Repeal Not Favored — Gas Conservation.

Section 4319, Revised Laws 1910 (Comp. Stat. 1921, sec. 7964), providing that immediately after penetrating gas-bearing rock, the owner, or lessee, shall shut in and confine the gas in said well until and during such time as the gas therein shall be utilized for lights, fuel or power purposes, is not repealed by section 2, c. 197, Session Laws 1915 (Comp. Stat. 1921, sec. 7921), defining the term "waste" as applied to natural gas, since both deal with the prevention of the wasteful utilization of the gas, and the latter act merely supplements the former.

## 3. Constitutional Law—Delegation of Powers to Corporation Commission — Gas Conservation.

Chapter 197, Session Laws 1915, conferring upon the Corporation Commission the power to make rules and regulations to prevent the "wasteful utilization" of natural gas and leaving to that body the power to define what uses are within the scope of that term, is not such a delegation of power to the commission as to render the said act unconstitutional for uncertainty.

## 4. Gas — Police Power — Conservation of Natural Gas.

The police powers of the state extend to the conservation of its natural resources, and where the facts show that the use of natural gas for the purpose of manufacturing carbon black constitutes a "wasteful utilization" thereof, the state may, through its regularly constituted agencies, prohibit the use of the gas in such manner and in the interest of the public welfare.

## 5. Prohibition—Power of Corporation Commission—Gas Conservation.

Where a statute confers upon the Corporation Commission the power and duty to prevent the wasteful utilization of natural gas, and that body orders that the utilization of natural gas from wells of a certain class in the manufacture of carbon black constitutes waste, held, that this court will not, by issuing writ of prohibition, interfere with the Corporation Commission in enforcing its order.

Original action by the Quinton Relief Oil & Gas Company, a corporation, petitioner, for writ of prohibition against the Corporation Commission of the State of Oklahoma et al., respondents. Writ denied.

Rainey & Flynn, Calvin Jones, and Guy A. Curry, for petitioner.

Ames, Chambers, Lowe & Richardson, W. J. Horton, and E. S. Ratliff, for respondents.

KENNAMER, J. Quinton Relief Oil & Gas Company, a corporation, petitioner, instituted this action against the Corporation Commission of the state of Oklahoma et al., respondents, praying for a writ of prohibition prohibiting the respondents from proceeding, acting under, or enforcing order No. 1667, entered by the corporation commission dated July 19, 1920, and supplemental order dated January 27, 1922, in cause No. 2039, entitled McAlester Gas & Coke Company and the City of McAlester v. The Quinton Relief Oil & Gas Company, the National Carbon Company, and the Western Carbon Company.

From an examination of the record and briefs of the petition it appears that counsel for petitioner contend that the orders of the Corporation Commission are void and of no force and effect for the reason the Corporation Commission was without jurisdiction to enter the orders. The orders complained of prohibited the Quinton Relief Oil & Gas Company from selling any portion of the natural gas produced by it from the Quinton gas field for the purpose of using the same or allowing the use of the same for the manufacture of carbon black or soot to be delivered therefrom.

It is argued by counsel for petitioner that section 4319, Revised Laws 1910, being section 7964, Comp. Stat. 1921, which provides:

"Any person, copartnership or corporation in possession, either as owner, lessee, agent or manager of any well producing natural gas, in this state, in order to prevent the said gas wasting by escape shall, immediately after penetrating the gas-bearing rock, in any well hereafter drilled, shut in and confine the gas in said well until and during such time as the gas therein shall be utilized for lights, fuel or power purposes: Provided, that this section shall not apply to any well operated for oil; Provided, further, that when in the course of drilling, gas production is developed, four days' free time shall be allowed in which to determine whether the well shall be shut and saved for a gas well or drilled further for the purpose of producing oil"

—conferred no power upon the Corporation Commission to enter the orders complained of, and if it be held that such section did confer such power, said section was repealed by chapter 197 of Session Laws 1915; and that section 2 of said act is void for the reason that the same is indefinite and uncertain in its terms and provisions, so as to wholly fail to constitute a valid law of the state.

Before entering a discussion of the legal

questions raised, it may be observed that the order entered on January 27, 1922, was merely the revocation of a temporary order made by the commission in 1921, granting the petitioner authority to sell a limited amount of natural gas to the Western Carbon Company until the further orders of the commission. The decisive question raised by the petitioners is the jurisdiction of the commission to regulate the conservation of natural gas produced on the premises of the petitioner.

Section 4319, Revised Laws 1910, section 7964, Comp. Stat. 1921, provides that, immediately after penetrating the gas-bearing rock, the owner, or lessee, shall shut in and confine the gas in said well until and during such time as the gas therein shall be utilized for lights, fuel, or power purposes.

Section 2, ch. 197, Session Laws 1915, being section 7921, Comp. Stat. 1921, provides:

"That the term waste, as used herein, in addition to its ordinary meaning, shall include escape of natural gas in commercial quantities into the open air, the intentional drowning with water of a gas stratum capable of producing gas in commercial quantities, underground waste, the permitting of any natural gas well to wastefully burn and the wasteful utilization of such gas."

It is clear from the foregoing section that the "wasteful utilization" of gas is prohibited, and jurisdiction is conferred upon the Corporation Commission to enforce the act. We are unable to agree with counsel for the petitioners that the only purpose of section 4319, Revised Laws 1910 (sec. 7964, Comp. Stat. 1921), was to prevent gas from escaping from the well; but it is evident from the language used, such gas must be utilized only for lights, fuel, or power purposes. One of the well-established rules of construction of statutes is that, if possible, effect must be given to each word and phrase used in the statute, unless to do so would produce an absurd result or render the statute unconstitutional. Board of Equalization v. First State Bank, 77 Okla. 291, 188 Pac. 115.

The act of 1915 defines "waste" to include the escape of natural gas in commercial quantities into the open air, the drowning of gas stratum with water, the permitting of any natural gas well to wastefully burn, and the wasteful utilization of such gas. The act in plain language provides that a gas well producing 2,000,000 cubic feet per day should be considered a commercial well and makes it the duty of pipe-line companies to purchase ratably from all producers in the field; provides civil and criminal remedies for the violation of the act; vests the Corporation Commis-

sion with jurisdiction to enforce it and grants appeals from the commissioner's order to the Supreme Court. It is obvious, under these statutory provisions, the commission had jurisdiction to enter the orders in question.

Counsel for petitioner insist that the Legislature has failed to define what constitutes wasteful utilization of gas, but has delegated to the Corporation Commission the power to determine that fact, and this constitutes an unlawful delegation of power and renders the act unconstitutional. We are unable to concur in the contention of counsel for the petitioner that the act of 1915 repealed section 4319, Revised Laws 1910 (7964, Comp. Stat. 1921), or that said act of 1915 is unconstitutional by reason of the power delegated to the Corporation Commission for uncertainty in its provisions. In construing various legislative enactments relating to the same subject, such enactments shall be construed together and given effect as a whole, if possible, in order to accomplish the purpose for which such acts were passed. Brown v. Miller et al., 89 Okla. 287, 215 Pac. 748.

The provisions of the act of 1915 in no way conflict with section 4319, supra, wherein it is provided for what purposes natural gas may be utilized when produced in sufficient quantity for the purposes therein mentioned. Section 4319, supra, provides the purposes for which natural gas may be utilized, and the act of 1915, supra, defines what shall constitute waste of natural gas, and the last phrase of section 2 of said act in general terms provides "wasteful utilization of such gas" as a definition of waste. This is a general term which vests the Corporation Commission with power to determine under a particular given state of facts whether or not the same constitutes a wasteful utilization of gas. It was within the constitutional power of the Legislature to vest the Corporation Commission with this jurisdiction.

In the case of Nash v. United States, 229 U. S. 373, Nash was prosecuted for violating the Sherman Anti Trust Act. The court in construing this act held that the statute only prohibited contracts in unreasonable restraint of trade. It was argued in this case that such a construction left it to the court or jury in such case to determine whether or not any given acts were or were not in unreasonable restraint of trade. However, it was not contended if the act was held invalid criminally, that would invalidate it as a civil statute, and it was clearly pointed out in the opinion of the court by Justice Holmes that it did not invalidate the statute because it con-

tained in its definition of the crime an element of degree as to which estimates may differ, which might result in the imprisonment of the offender because his honest judgment did not anticipate that which the judgment of a jury of less competent men might be. In answer to this contention, the court said:

"But apart from the common law as to restraint of trade thus taken up by the statute, the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matters of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure according to the degree of danger attending it' by common experience in the circumstances known to the actor. The very meaning of the fiction of implied malice in such cases at common law was that a man might have to answer with his life for consequences which he neither intended nor foresaw.' Commonwealth v. Pierce, 138 Mass. 165, 178. Commonwealth v. Chance, 174 Mass. 245, 252. 'The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' 1 East P. C. 262. If a man should kill another by driving an automobile furiously into a crowd he might be convicted of murder however little he expected the result. See Reg. v. Desmond, and other illustrations in Stephen, Dig. Cri. Law, art. 223 (1st Ed.) p. 146. If he did no more than drive negligently through a street he might get off with manslaughter or less. Reg. v. Swindall, 2 C. & K. 230; Rex v. Burton, 1 Strange, 481. And in the last case he might be held although he himself thought that he was acting as a prudent man should. See The Germanic, 196 U. S. 589, 596. But without further argument, the case is very nearly disposed of by Waters-Pierce Oil Co. v. Texas (No. 1). 212 U. S. 86, 109, where Mr. Justice Brewer's decision and other similar ones were cited in vain. We are of opinion that there is no constitutional difficulty in the way of enforcing the criminal part of the act."

See International Harvester Company v. Kentucky, 234 U. S. 216, where the court held:

"An antitrust criminal law may not necessarily be unconstitutional merely because it throws upon men the risk of rightly estimating what is an undue restraint of trade, but to compel a man to guess what the fair market value of commodities manufactured or sold by him would be under other than existing conditions is beyond constitutional limits."

This court, in the cases of Oklahoma Gin Company v. State, 63 Okla. 10, 158 Pac. 629, and Oklahoma Light & Power Company v. Corporation Commission, 96 Okla. 19, 220 Pac. 54, sustained the constitutionality of section 8235, Revised Laws 1910, (section 11032, Comp. Stat. 1921), conferring upon the Corporation Commission the power to determine whether the nature or extent of any business is such that the public must use the same. Second, the power to determine whether the services offered by any business, or the consideration by it given or taken, or the commodities bought or sold therein are offered or taken by purchase or sale in such manner as to make it of public consequence, or in such manner as to affect the community at large as to supply, demand, or price or rate thereof. Third, it gives the Corporation Commission the power to control said business, and to prescribe all its practices, prices, rates, and charges.

This court, in the last case, supra, held, under the statute, the Corporation Commission had the power to determine, in a proper proceeding from the evidence, whether any business possessed the prescribed statutory characteristics, and if such business was within the characteristics, the regulatory power of the state might be invoked for the purpose of correcting the abuse complained of.

We are clearly of the opinion that the act of 1915, supra, is a valid act. The power of the commission to regulate the burning of natural gas for the production of carbon black or soot in enforcing the conservation policy of the state is definitely settled in favor of the state in the case of Walls v. Midland Carbon Company, 254 U. S. 300.

The court sustained the constitutionality of chapter 125, Session Laws 1919, of the state of Wyoming. The act in part provided that the use, consumption, or burning of natural gas without the heat therein contained being fully and actually applied and utilized, is a waste and extravagant use when such gas well or source of supply is located within 10 miles of any incorporated town or industrial plant. The court, in sustaining the validity of the act, held:

"Neither the manufacturer of carbon black from natural gas nor the owner of the land on which are the gas wells and the pipe line, and of mineral leases covering proved gas territory, is deprived of his property without due process of law, or denied the equal protection of the laws, nor are the obligations of pre-existing contracts unconstitutionally impaired, by a state statute which prohibits the use of natural

gas for products where such gas is burned or consumed without fully and actually applying and utilizing the heat therein contained for other manufacturing or domestic uses (but only when the gas well or source of supply is located within 10 miles of an incorporated town or industrial plant), and forbids the owner or lessee of natural gas wells within the 10 mile limit to sell or dispose of the gas for the purpose of manufacturing or producing carbon or other resultant products from the burning or consumption of such gas unless the heat therein contained is fully and actually applied and utilized for other manufacturing or domestic purpose, since, there being great disproportion between the volume of gas and the product, the state could exert its police power in this way to conserve the gas supply for less wasteful uses."

A careful examination of the authorities shows that there is almost unanimity in holding that the burning of natural gas for carbon purposes in high pressure fields, having sufficient rock pressure to force gas through a pipe line to domestic consumers, and where the same may be used for such purpose, constitutes a wasteful utilization thereof. Natural gas has twice the heating units of artificial gas, and taking into consideration the convenience of natural gas, it is intrinsically worth more than artificial gas; its market value being from $2 to $3 per 1,000 cubic feet. The amount of carbon black produced from 1,000 cubic feet of natural gas has a market value of about 10 cents. It, therefore, is obvious that the state, in the proper exercise of its police power and in conservation of so valuable a natural resource as natural gas, may prohibit the wasteful utilization of the same in the interest of the public welfare.

For the reasons stated, the application for writ of prohibition is denied.

JOHNSON, C. J., and COCHRAN, MASON, BRANSON, and HARRISON, JJ., concur.