**WAGNER et al. v. SWAN, Judge, et al.**

No. 23982. Opinion Filed Feb. 18, 1933.

James W. Crosgrove, Hamilton, Gross & Howard, Rainey, Flynn, Green & Anderson, Boyd Ewing, and William E. Byers, for petitioners.

N. B. Cope, Scott Ferris, Merrick A. Whipple, J. B. A. Robertson, and O. C. Essman, for respondents.

SWINDALL, J. This is an original proceeding commenced in this court by George W. Wagner, Supervisor of Building and Loan Associations of the state of Missouri, and George W. Wagner and Andrew J. Spahr, ancillary receivers in the district court of Tulsa county, Okla., relators, against J. H. Swan, judge of the superior court of Okmulgee county, Okla., and W. J. Barnett, Bank Commissioner of the state of Oklahoma, and John B. Doolin, Brack Rains, and Ross E. Thompson, members of Building and Loan Board of Oklahoma.

The object and prayer of relator's petition is to secure a writ of prohibition against J. H. Swan, judge of the superior court of Okmulgee county, appointing liquidating agents of the property of the Farm & Home Savings & Loan Association of Missouri, located in the state of Oklahoma, and to prevent the Bank Commissioner of the state of Oklahoma from further proceeding in the superior court of Okmulgee county, Okla. Upon the hearing this court granted an alternative writ of prohibition, and in compliance with the same the respondents have filed a response to the petition of relators. The Farm & Home Savings & Loan Association is a building and loan association organized and existing under and by virtue of the laws of the state of Missouri, and permitted to do business in the state of Oklahoma in compliance with and obedience to the laws governing and regulating building and loan associations. On or about the 2nd day of June, 1932, the board of directors of said association passed a resolution requesting the Supervisor of Building and Loan Associations of the state of Missouri to take charge of its business, property and affairs. Thereafter, and on or about the 6th day of June, 1932, the said George W. Wagner, acting as Supervisor of Building and Loan Associations for the state of Missouri, instituted in the circuit court of Vernon county, Mo., his suit against said association, wherein he made certain allegations showing that the association was in an unsafe or failing condition. After hearing the facts, the circuit court, upon consideration of said petition, appointed George W. Wagner receiver of the business, property, assets, and effects of said association, and thereupon, after duly qualifying, the relator, George W. Wagner, took possession of the property, assets, and effects of the business of said association within the state of Missouri, and thereafter, without notice to the Bank Commissioner of the state of Oklahoma, as such receiver, instituted in the district court of Tulsa county, Okla., his certain suit against said association, and in his petition in the district court of Tulsa county alleged his appointment as receiver by the circuit court of Vernon county, Mo., and alleged that he had qualified as receiver in that court, and that in order to preserve and conserve the property and assets within the state of Oklahoma belonging to said association, it was necessary that an ancillary receiver or ancillary receivers be appointed in Oklahoma. The president of the association entered its written appearance in the district court of Tulsa county and consented that an ancillary receiver or ancillary receivers be appointed by that court. On June 6, 1932, upon consideration of the petition in the district court of Tulsa county, the Honorable S. J. Clendenning, a district judge of Tulsa county, appointed George W. Wagner and A. J. Spahr as ancillary receivers of the property, assets, and effects of said association within the state of Oklahoma. On the 13th day of August, 1932, W. J. Barnett, as Bank Commissioner of Oklahoma, by and with the unanimous approval of the members of the Building and Loan Board of Oklahoma, made and entered his order within and whereby he found and determined that the Farm & Home Savings & Loan Association of Missouri, a foreign corporation organized and existing under and by virtue

of the laws of the state of Missouri and doing business in the state of Oklahoma, was in fact insolvent in that it had defaulted in its obligations to its shareholders and was unable to pay its shareholders. On the 15th day of August, 1932, the respondents, other than J. H. Swan, judge of the superior court of Okmulgee county, instituted in the superior court of that county a suit styled the State of Oklahoma ex rel. W. J. Barnett, Bank Commissioner of the State of Oklahoma, and the Building and Loan Board of Oklahoma, Plaintiffs, v. Farm and Home Savings & Loan Association of Missouri, a Corporation, George W. Wagner and Andrew J. Spahr, Defendants, in which they averred and charged, among other things, that the respondent W. J. Barnett is the duly appointed, qualified, and acting Bank Commissioner of the state of Oklahoma, and by virtue thereof under the laws of the state of Oklahoma is ex officio chairman of the Building and Loan Board of Oklahoma; that the said Farm and Home Savings & Loan Association of Missouri is a foreign corporation organized under and by virtue of the laws of the state of Missouri; that George W. Wagner is a resident and citizen of the state of Missouri, and that the said Andrew J. Spahr is a resident of the city of Tulsa, Okla., and a citizen of said state. The petition herein sets forth the facts showing the appointment of the receiver in the state of Missouri and the appointment of the ancillary receivers in the district court of Tulsa county on the 6th day of June, 1932, without notice to the Bank Commissioner of the state of Oklahoma, and alleges that said appointment of the liquidating agents and ancillary receivers in Okmulgee county was without authority of law and void, prays for an injunction against the receivers proceeding, and further alleges that on the 15th day of August, 1932, the honorable judge of the superior court, who is named as one of the respondents herein, made and entered his order ratifying, approving, and confirming the order of the Bank Commissioner made on the 13th day of August, 1932, designating and appointing Robert Liddell and J. A. Price as coliquidating agents and receivers as aforesaid.

It is the contention of the relators that certain sections of our Code relating to foreign building and loan associations doing business in the state control such associations and that thereunder the Bank Commissioner does not have authority to find a foreign building and loan association to be insolvent and to wind up its affairs in the state of Oklahoma; and, further, that the Bank Commissioner did not make an examination of the affairs and conditions of the Farm and Home Savings & Loan Association before finding that the same was insolvent; and that the superior court of Okmulgee county was without authority and jurisdiction to appoint a receiver of the property and assets of said building and loan association in the state of Oklahoma for the reason that said association had its principal place of business at Tulsa in Tulsa county, Okla., and that if a receiver was to be appointed such appointment should have been made by a court of Tulsa county having jurisdiction to appoint such receiver. The Bank Commissioner denies these propositions and contends that the appointment of the coliquidation agents and receivers was in conformity to section 9851, O. S. 1931. There is some contention that sections 9865 and 9866, being sections 10 and 11 of chapter 200, Session Laws 1913, are in conflict with section 9851, enacted as section 10, chapter 28, Session Laws 1925, and therefore are repealed by implication by said section. In order that a better understanding may be had of the several provisions of these sections, we deem it advisable under the circumstances to set them out in full herein. They are as follows:

9851. "When it shall appear to the Bank Commissioner, after an examination of the affairs and conditions of a building and loan association, that such association is insolvent, the Bank Commissioner shall, with the approval of a majority of the Building and Loan Board, take possession thereof, and all of its property and assets for the purpose of winding up its affairs and paying the creditors thereof. For the purpose of liquidation, the Bank Commissioner may appoint such liquidating agent or agents, attorneys and employees that may be necessary in winding up the affairs of such insolvent association. All liquidating agents and employees shall, before entering upon the duties of their office, execute to the state of Oklahoma a fidelity bond in such amount as the Bank Commissioner shall designate, which shall be approved by the Bank Commissioner and filed in his office. The bond of such agent shall be conditioned upon the faithful performance of all duties required of such agents and employees and the faithful accounting to the Bank Commissioner for all monies, funds, and assets that shall come into possession of such agent upon demand of the Bank Commissioner. The compensation of such liquidating agent or employees shall not exceed the sum of four thousand ($4,000.00) dollars, per year.

Such liquidating agents and attorneys shall hold office at the will and pleasure of the Bank Commissioner, and such liquidating agents shall submit to the Bank Commissioner an account duly verified each month, giving in detail a statement of all receipts and disbursements made from the assets in their possession, and each three months after appointment such liquidating agent shall file in the district court of the county in which said association was located a complete statement, setting forth in detail items of receipts and disbursements out of the assets of such association, and no payments shall be made from such assets except upon written order of the Bank Commissioner.

"The Bank Commissioner shall have power and authority to institute and prosecute all necessary suits for the purpose of liquidation of any insolvent association taken over by the Bank Commissioner, and such suits shall be brought in the name of the state of Oklahoma, on the relation of the Bank Commissioner, and no costs shall be required and the state of Oklahoma shall not be liable for any costs in the prosecution of said suits. After complete liquidation of an insolvent association and when the creditors thereof shall have been paid in full, if there remain in the hands of the Bank Commissioner any assets, such assets remaining shall revert to the stockholders and be surrendered by the Bank Commissioner to such stockholders of said insolvent association. The Bank Commissioner shall have authority, by and with the consent of the district court, or a judge thereof, in the county in which an insolvent association is located, to compound bad and doubtful debts." (S. L. 1925, c. 28, sec. 10.)

9865. "If it shall appear to the Bank Commissioner from any report of any such association, or from any examination made by him, or by the person or persons appointed by him to make such examination, or from any knowledge or information, in his possession from whatever source obtained, that any such association has committed a violation of its charter, or of law, or that said association is conducting its business in an unsafe and unauthorized manner, or that the assets of any such association are insufficient to justify the continuance of business by such association, he shall communicate the fact to the officers or directors of such association. Such officers or directors shall be allowed sixty days within which to make the assets sufficient, or to correct any illegal practices, and in case such assets are not made sufficient, or the illegal practices corrected within the time herein provided, or whenever it shall appear to the said Bank Commissioner that it is unsafe or inexpedient for any such association to continue to transact business, the said Bank Commis-

sioner shall institute proceedings in the proper court in the county in which such association has or had its principal office, to enjoin or restrain such association from the further prosecution of its business, either temporarily or perpetually, or for such injunction and the dissolution of such association and the appointment of a receiver thereof for the purpose of settling and winding up its affairs, or for any and all such remedies combined, as the Bank Commissioner may deem necessary." (S. L. 1913, c. 200, sec. 10.)

9866. "No such association, whether heretofore or hereafter organized in this state, shall cease to do business, or endeavor to liquidate its affairs prior to the maturity of all of its stock, except by and with the consent of the stockholders representing seventy-five per cent. of its capital stock. The liquidation of any building and loan association shall be under the supervision of the Bank Commissioner. It shall be unlawful for such association to make a voluntary general assignment of its business affairs, and if it is discovered to be in failing condition, the officers and directors thereof shall immediately place it in the hands of the Bank Commissioner. But should the officers and directors of an association make an attempt to make a voluntary general assignment of its assets, the Bank Commissioner shall, as soon as practicable, ascertain, by a thorough examination into its affairs, its actual financial condition, and if, in his opinion, the association is solvent and can be placed in condition to resume business to the benefit and profit of its creditors and stockholders, he shall proceed to conduct and manage its affairs, but if he shall become satisfied that the association is insolvent and cannot resume business, he shall immediately institute proceedings in the proper court to have a receiver appointed for such association, and shall proceed to wind up its affairs and business for the benefit of its creditors and stockholders. For his service in managing and conducting the affairs of any insolvent association he shall receive a reasonable compensation not to exceed two and one-half per cent. of its assets, which, together with his necessary expenses, is to be paid out of said assets." (S. L. 1913, c. 200, sec. 11.)

We will now consider briefly the enacting clause and parts of some of the acts relating to building and loan associations. Article 5 of chapter 10, Session Laws 1905, appears to be the first enactment by the Territorial Legislature relative to foreign building and loan associations; the enacting clause being:

"An Act Relating to Building and Loan Associations, Providing the Method by Which

They May be Permitted to Transact Business in This Territory, and Providing for the Regulation and Inspection Thereof."

Section 1 relates to all foreign building and loan associations and all other corporations or associations of persons, incorporated, organized, residing, or having its place of business outside of Oklahoma Territory and transacting a building and loan business in Oklahoma Territory, by whatever name they may be known, and provides that such associations shall conduct such business in this territory in accordance with said act, and no such building and loan association shall have authority to transact any business in this territory until it shall procure from the Bank Examiner of this territory a certificate of authority to do so. This section is carried forward and adopted as a part of the Revised Laws of Oklahoma 1910, vol. 1, as section 1320, "Bank Examiner" being changed to "Bank Commissioner" in accordance with section 1, article 14, of the state Constitution. Article 7, chapter 15, subject "Corporations," relates to domestic building and loan associations, and article 8, chapter 15, subject "Corporations," relates to foreign building and loan associations. In 1913 the Legislature enacted chapter 200, Session Laws 1913, the enacting clause being:

"An Act relating to building and loan associations and others issuing contracts on the partial payment plan, providing for the supervision and regulation thereof; providing for the qualifications of the Building and Loan Auditor; repealing section 4, article 17, chapter 17, Statutes 1893, and section 15, article 5, chapter 10, Session Laws 1905; amending section 17, article 17, chapter 17, Statutes 1893; and declaring an emergency."

Section 2 of that act provides that:

"Any building and loan association now existing, or hereafter organized under the laws of the state of Oklahoma, and all foreign building and loan associations doing business in the state of Oklahoma, or any person, partnership, or corporation engaged in the business of disposing of contracts on the partial payment plan, shall be subject to the supervision of the Bank Commissioner."

Chapter 238, enacted by the same Legislature, amended that section in some particulars, but in no way material to the discussion of this case. In 1925 the Legislature enacted chapter 28, Session Laws 1925, entitled:

"An Act providing for the organization, operation, regulation, supervision and control of building and loan associations doing business in the state of Oklahoma; making section 5350, Revised Statutes of Oklahoma 1921, inapplicable to building and loan associations providing for the liquidation of insolvent building and loan associations, repealing all acts in conflict herewith, and declaring an emergency."

We have heretofore set out in full sections 10 and 11, chapter 200, Session Laws 1913, and section 10 of chapter 28, Session Laws 1925, as they appear in the Oklahoma Statutes of 1931.

It is a cardinal rule in the construction of statutes that the intention of the lawmaker, when ascertained, must govern, and in ascertaining the intention of the lawmaker in enacting various legislative enactments relating to the same subject, such enactments shall be construed together, and given effect as a whole, if possible, in order to accomplish the purpose for which such acts were passed. Brown v. Miller, 89 Okla. 287, 215 P. 748. See, also, Oklahoma Coal Co. v. Atkinson et al., 121 Okla. 59, 247 P. 366. In the case of State v. State ex rel. Schull, 142 Okla. 293, 286 P. 891, this court stated the rule as follows:

"Where different legislative enactments have reference to the same subject and are consistent with each other, they should be construed together and harmonized, if possible, so that effect will be given to each so far as is consistent with the evident intent of the latest enactment."

See, also, Rock Island Implement Co. v. Fagerquist et al., 99 Okla. 282, 227 P. 117; Shimonex v. Tillman, 150 Okla. 177, 1 P. (2d) 154.

"Two or more statutory provisions relating to the same subject-matter should be considered so as to give effect to all the provisions, unless it is made reasonably apparent by the acts that the Legislature intended to repeal the prior provisions by implication."

American Investment Co. v. Usrey, 106 Okla. 202, 233 P. 1078. In the case of State ex rel. Power v. Wenner, County Treasurer, 121 Okla. 190, 249 P. 408, we held that:

"Repeals by implication are not favored, and, in construing separate enactments of the Legislature, that conclusion as to their intent must be reached, if possible, so as to give effect to each provision, and an earlier statute will not be held to be repealed by a later one by implication, unless the conflict between the two is irreconcilable."

So, we think that it was the intent of the Legislature that the several enactments

above mentioned should apply to both domestic and foreign building and loan associations so far as applicable. It is equally clear that sections 10 and 11 of chapter 200, Session Laws 1913, now sections 9865-9866, Oklahoma Statutes, 1931, were not repealed by implication by section 9851, Oklahoma Statutes 1931, section 10, chapter 28, Session Laws 1925.

The Bank Commissioner, by his order of August 13, 1932, did not state that after an examination of the affairs and conditions of the building and loan association involved he found such association to be insolvent, and in his petition filed in the superior court of Okmulgee county on August 15, 1932, he did not allege that after an examination of the affairs and conditions of said building and loan association he had found the same to be insolvent, and until such an examination of the affairs and conditions is made by the Bank Commissioner, we do not think that he has authority to appoint liquidating agents to wind up the affairs of such association in this state, as it is clearly stated in section 9851, supra, that before winding up the affairs of such insolvent corporation it shall appear to the Bank Commissioner, after an examination of the affairs and conditions of a building and loan association, that such association is insolvent, and then before the Bank Commissioner is authorized to appoint a liquidating agent or agents, he must have the approval of a majority of the Building and Loan Board before taking possession of the association for such purpose. That section does not provide for the appointment of receivers, but only for liquidating agents to wind up the affairs of an insolvent building and loan association. If a foreign building and loan association is or becomes insolvent and is found to be insolvent in the state where organized, then the Bank Commissioner of this state may find such association to be insolvent and wind up the affairs of such association in this state. We do not think that the Bank Commissioner of this state has power and authority to find a foreign building and loan association insolvent, but in the event such association is found to be insolvent in the state where organized, then he may take steps to wind up its affairs in this state under section 9851.

Under section 9865, supra, the Bank Commissioner, among other things, may, whenever it shall appear to him that it is unsafe or inexpedient for such association to continue to transact business in the state,

institute proceedings in the proper court in the county in which such association has or had its principal office to enjoin or restrain such association from the further prosecution of its business, either temporarily or permanently, and for the appointment of a receiver thereof for the purpose of settling and winding up its affairs, or for any and all of such remedies combined as are mentioned in said section as he may deem necessary. It is admitted that the principal office of the building and loan association involved was at Tulsa, Okla., and we hold that under this section the venue of an action for the appointment of a receiver is in Tulsa county, and that the courts of that county having jurisdiction to appoint receivers in such cases have the exclusive jurisdiction to appoint a receiver to perform the duties that may be performed under said section, and that prohibition will issue to restrain an inferior court from proceeding in an action or proceeding of which another inferior court has exclusive jurisdiction.

Relative to the appointment of the ancillary receivers by the district court of Tulsa county, we are of the opinion that under section 9866, if it was discovered by the officers and directors of said association that the same was in an unsafe or failing condition, they should have placed the property, assets, affairs, and records of the association in the state of Oklahoma in the hands of the Bank Commissioner of this state, and that before seeking the appointment of a receiver in the district court of Tulsa county, they would be required to show that they had complied with the laws of the state of Oklahoma relative to building and loan associations in an unsafe or failing condition, and if the Bank Commissioner refused to take immediate possession of the affairs of the building and loan association in this state, in order to protect all parties in interest, upon a proper showing to the district court of Tulsa county, that court would have power and jurisdiction to appoint a receiver to preserve the assets of such association in this state. In other words, before going into a court of general jurisdiction for relief, they should offer to comply with the laws of this state relating to building and loan associations that are in an unsafe or failing condition. The officers and directors should do this for at least two good reasons: First, because section 9866, supra, directs them to do so; and, second, the Bank Commissioner, by a thorough examination into the affairs

and financial condition of said association, might arrive at the opinion the association is solvent and can be placed in condition to resume business to the benefit and profit of its creditors and stockholders, and if so, then he should proceed to conduct and manage its affairs until it may resume business under its officers and directors, or the Bank Commissioner may work in co-operation and harmony with the proper officer of the state where the corporation is organized in cases of this kind and prevent much needless litigation and expense.

From the foregoing we conclude that the superior court of Okmulgee county was without jurisdiction to appoint liquidating agents or receivers and that the Bank Commissioner of the state of Oklahoma should apply to the district court of Tulsa county, being the county in which the association had or has its principal office in this state, for the appointment of a receiver and for such relief and protection of the assets of the association and the protection of the stockholders and creditors of such association in this state as he may deem proper under section 9865.

This court, exercising a general superintending control over all inferior courts, prohibits further proceedings in the district court of Tulsa county by the receiver of the Farm and Home Savings & Loan Association heretofore appointed by the district court of that county for a period of 30 days to permit the Bank Commissioner, if the receivers so appointed are not satisfactory to him, to make application to a court in Tulsa county having power and jurisdiction to appoint a receiver in that county and proceed consistently with the views herein expressed. The writ of prohibition is granted against the respondents from further proceeding in the superior court of Okmulgee county.

RILEY, C. J., CULLISON, V. C. J., and OSBORN, BAYLESS, and BUSBY, JJ., concur. WELCH, J., dissents. ANDREWS, J., disqualified and not participating. Mc-NEILL, J., absent.