COMMISSIONERS OF THE LAND OFFICE — — SALE OF LAND With regard to public lands which are not within the coverage of Section 64 O.S. 183 [64-183] of Title 64 O.S., The Commissioners of the Land Office are not prohibited from making sales of such lands in amounts totaling in excess of 160 acres to a single buyer, provided each sales transaction is conducted in conformance with the applicable rules and regulations and not more than 160 acres are sold in a single transaction. A prospective purchaser holding a preferential purchase right lease can exercise his rights thereunder as to acreage exceeding 160 acres in total provided that he does so with respect to individual sales transactions involving tracts not exceeding 160 acres. The Attorney General has received your request for an opinion wherein you raise the following question: "May the Commissioners of the Land Office lawfully sell more than 160 acres of land in Sections 13, 33, 16 and 36 i.e. 'original grant land' to any one person?" You have advised that a portion of the lands in question are now under lease to a preferential purchase right lessee and that it is your intention to confine the size of each tract sold in a single transaction to 160 acres. Therefore, the precise issue posed by your question is whether, with reference to lands of the type alluded to, the Commissioners of the Land Office can properly make sales of in excess of 160 acres to a single purchaser, provided, first, each such transaction is confined to tracts not exceeding 160 acres, and second, each sale is made according to appropriate procedures governing an individual sales transaction. Since sales of public lands are dealt with generally in the Enabling Act, the State Constitution and at least one section of the statutes it is necessary to review each of these sources to determine what, if any, constraints any of them imposes. The matter of the statutory and constitutional provisions can be dealt with readily. The only statute expressly limiting the right of a single buyer to purchase a tract in excess of 160 acres is Section 183 of Title 64, which sets forth such a restriction. However, Section 183 is limited in its application to the lands described in Section 181 of Title 64; and thus is confined in its coverage to "indemnity" lands, certain specific grants for the establishment of colleges and universities, and "lands embraced in Sections numbered 33 in that part of the State formerly known as Oklahoma Territory and granted to the State for charitable and penal institutions and public buildings . . ." (64 O.S. 181 [64-181]). You have advised that the lands to which your question pertains are not within any of these categories; and, therefore, consideration can be given to the pertinent provisions of the Enabling Act and the State Constitution. The relevant portions of the Enabling Act are found in Section 9 dealing with common school lands (Sections 16 and 36 of each township) and Section 10 dealing with university and public institution lands (Section 13 and 33). These sections are identical in pertinent part and state that such lands may be sold: ". . . (I)n 160 acre tracts or less, under such rules and regulations as the Legislature of the said State may prescribe, preference rights to purchase at the highest bid being given to the lessee at the time of such sale, . . ." The relevant provisions of the Constitution are Sections 1 and 4 of Article XI. (Article XI, Section 1, Article XI, Section 4) By Section 1 the State accepted all the conditions and provisions of the Enabling Act, including its restriction as to use and disposition of all forms of public lands. Section 4 states that such lands will be retained or sold or other wise disposed of "according to such rules and regulations as the Legislature may prescribe in conformity with the regulations of the Enabling Act." It is to be recognized that there are different lines of authority as to the constraints, if any, which the Enabling Act can impose upon the ability of the State to undertake activities in addition to, or even in conflict with its provisions. Since Section 22 of the Enabling Act required the State Constitutional Convention to accept the terms and conditions set forth therein by "ordinance irrevocable", the issue underlying the divergence of opinion referred to is whether the unqualified acceptance of the Enabling Act constitutes an ongoing restriction barring the State from ever deviating from its terms. In Magnolia Petroleum Co. v. Price, 86 Okl. 105, 206 P. 1033, (1922); affirmed45 S.Ct. 312, 267 U.S. 415, 69 L.Ed. 689, the question raised was the ostensible right of a preferential purchase right lessee to compel the State to sell him all the public lands within his leasehold. It was concluded that it was not the intent of the Enabling Act to compel the State to sell such public lands; but merely to grant certain rights, if and when the State, in its discretion, elected to sell. Therefore, the courts were not required to rule squarely on the question whether conditions and limitations of the Enabling Act constitute ongoing constraints upon the State and declarations on this issue are, therefore, dictum. However, the Oklahoma Supreme Court and the Supreme Court of the United States both stressed the so-called "contract" or "compact" theory which embodies the proposition that the State's unqualified acceptance of the provisions of the Enabling Act irrevocably bound the State to its terms. A view different from the dictum of the Price case is found in Smith v. State, 28 Okl. 235, 113 P. 932 (1911). Consistent with several early decisions of the Supreme Court of the United States when it had occasion to consider the point (see e.g. Williamett Iron Bridge Co. v. Hatch,8 S.Ct. 811, 125 U.S. 1, 31 L.Ed. 629 (1887); Huse v. Glover,7 S.Ct. 313, 119 U.S. 543, 30 L.Ed. 487 (1886); and Escanaba Co. v. Chicago, 2 S.Ct. 193, 107 U.S. 678, 27 L.Ed. 442
(1882)), the gist of this decision was that Congress did not, and indeed could not by the Enabling Act, foreclose the State from exercising its fundamental power to enact laws conforming to the desires of its people. It was deemed to be in violation of the Federal Constitution to attempt to impose upon States admitted subsequently conditions or limitations to which the original States were not subjected. While the two lines of authority represented by the Price and the Smith cases are noteworthy as general background matter to the issue raised by your question, the pertinent provisions of the Enabling Act, when properly construed, do not foreclose a single purchaser from buying in excess of 160 acres of the lands in question. Thus, even if the so called "compact" theory were the governing view, it would not dictate a negative answer to your question. As contrasted with the provisions of 64 O.S. 183 [64-183] (which, as noted, is not applicable) the provisions of the Enabling Act do not contain any limitation on the total acreage which may be purchased by a single buyer. Rather, the Act states that not more than 160 acres may be sold in a single transaction. The question, therefore, is whether it is nevertheless implicit in the express language of the Enabling Act that a single buyer may not purchase two or more tracts totaling in excess of 160 acres; and the answer would appear to be "no". It is a familiar rule that one ordinarily determines the meaning and intent of legislation according to the accepted and normal meaning of the language employed. Resort is made to statutory construction only when the language used is ambiguous. Price v. Shell Oil Company, 199 Okl. 193, 185 P.2d 211
(1947); Forston v. Hessler, 363 P.2d 949 (Okl. 1961). Various provisions of a given legislative enactment are to be construed together; and insofar as possible, effect will be given to all of the provisions of the statute in order to accomplish the underlying legislative objective. Wagner v. Swan, 162 Okl. 95, 19 P.2d 555 (1933); State ex rel Hampton v. Oakes, 281 P.2d 749 (Okl. 1955). It is apparent that a reading whereby the Commissioners would be prohibited from selling two or more tracts totaling in excess of 160 acres to a single purchaser would constitute an unnecessary and improper gloss upon the express language of the Enabling Act. This language sets forth no such limitation. Moreover, the intent underlying the provisions in question was to assure that if the public lands were to be disposed of the same would be accomplished in a manner consistent with the underlying objective, namely, to assure that the lands or the proceeds therefrom were used effectively for the purposes intended by Congress. The proviso seeking to prevent the sale of tracts exceeding 160 acres in a single transaction plainly was intended to promote the sale of each parcel of land at the best price obtainable. This objective does not require a construction whereby a buyer who had already purchased a tract of this size would thereafter be foreclosed from bidding on, and, if successful, purchasing a second tract. Indeed, if anything, such a view would be in conflict with the underlying intent of the congressional enactment. Relevant sections of the Enabling Act dealing with the preferential purchase right lessee suggest the same outcome. No limitation is placed upon the maximum acreage which may be held under such a lease nor upon the lands to which the preferential purchase right may be exercised. Therefore, unless it is to be presumed that the absence of such a limitation was a mere oversight, the clause dealing with the preferential purchase right lessee also dictates the conclusion that there is no unqualified prohibition against a single buyer's purchasing in excess of 160 acres of the lands in question. It is, therefore, the opinion of the Attorney General that, to an extent commensurate with the above discussion, your question can be answered affirmatively. Specifically, if the lands in question are sold in tracts not exceeding 160 acres, a buyer who has purchased a tract of this size may nevertheless bid on, and if successful, purchase additional tracts. One holding a preferential purchase right lease on such lands can exercise the rights thereby granted as outlined above on all acreage within his leasehold which the State elects to sell. (Frank Gregory)